Wesley Lenth, Appellee, v. Rudolph Schug, Appellant.

No. 44372.

SEPTEMBER 27, 1938.

SUPPLEMENTAL OPINION REINSTATING FORMER OPINION
SEPTEMBER 19, 1939.

D. D. Murphy & Son, for appellee.

Alex Holmes, for appellant.

STIGER, J.—Plaintiff brought this action to recover damages to the estate of LuNida Lenth, a child of the age of 10 years, who was struck by an automobile owned by the State of Iowa and driven by the defendant, the injuries received causing her death.

One of the defenses to the action is that at the time of the accident the defendant was an agent and employee of the Board of Railroad Commissioners of the State of Iowa, was performing his d'uties as such employee, and by reason thereof is not liable to the plaintiff.

Appellant's first assignment of error is that the court erred in giving instruction No. 10, which reads:

"As to the defense that the defendant was in the employ of the state, through the Railroad Commission, you are instructed that, at the time of the accident, the defendant was engaged in no governmental function which would excuse him from the exercise of ordinary care which is such care as an ordinarily prudent person would exercise under like circumstances and conditions, and you are, therefore, instructed not to consider his defense of being in the employ of the state."

Appellant claims the above instruction deprives him of the defense that because he was an agent of the commission and performing a governmental function he had the same immunity from liability as his employer. Appellant relies on the cases of Shirkey v. Keokuk County, 225 Iowa 1159, 275 N. W. 706, and Hibbs v. Independent School District, 218 Iowa 841, 251 N. W. 606, which cases adhered to and reaffirmed the principle announced by some of the former decisions of this court that an agent or servant engaged in performing a governmental act is not liable in damages for negligence in doing the act. These cases have been expressly overruled by the recent case of Montanick v. McMillin, 225 Iowa 442, 280 N. W. 608, which held that an employee of a governmental body who commits a wrongful act is liable to the person injured and does not share the immunity of his principal.

The trial court was right in instructing the jury not to consider the defense.

Appellant further claims that, assuming it was not a good defense, plaintiff waived its sufficiency by failing to attack it in the trial court. This court has frequently approved the

rule that if matter pleaded as a defense is not challenged by motion or demurrer or otherwise, it will, if proven, defeat the plaintiff's action, though had the question been properly raised the answer would have been held to present no defense. Strand v. Bleakley, 214 Iowa 1116, 243 N. W. 306; Hornish v. Overton, 206 Iowa 780, 221 N. W. 483; Fairley v. Falcon, 204 Iowa 290, 214 N. W. 538; Ormsby v. Graham, 123 Iowa 202, 98 N. W. 724.

█ Plaintiff did not attack the defense by motion or demurrer. In his reply to defendant's answer, plaintiff not only denied that defendant was an employee of the Board of Railroad Commissioners but also stated that if defendant were such employee such fact would not, as a matter of law, be a defense to the action and exempt him from liability to the plaintiff.

Appellant states in his argument:

"The plaintiff in no proper way challenged said defenses; the only thing plaintiff did was to file a general denial thereto; said defenses were not challenged by a demurrer, nor by any objections to the evidence, nor by requested instructions, or otherwise.

"In fact the case was tried on the theory that said defenses were good in law both by the plaintiff and the trial court."

We cannot concur in appellant's analysis of the record and his contention that the case was tried on the theory that the defense was sufficient. We are of the opinion that the case was tried on the theory that the sufficiency of the defense was an issue in the case raised by the reply. The reply directly challenged the sufficiency of the defense, plaintiff objected to the evidence offered by the appellant tending to show that he was an employee of the commission at the time of the accident on the ground that such fact was immaterial, irrelevant and incompetent under any issue in the case, and requested an instruction to the effect that the fact that defendant was an employee of the commission engaged in a governmental function did not constitute a defense to plaintiff's action. The trial court, in his instruction, recognized that this question was involved in the case and gave instruction No. 10.

While the function of a reply is not to present questions of law, appellant did not raise the question of waiver of the sufficiency of the defense by failure to assail it by motion or de-

murrer in the lower court nor did he challenge the method adopted by plaintiff in presenting the law question in his reply.

In appellant's motion for directed verdict, he did not rely on a waiver of the insufficiency of the defense but insisted, under the rule adhered to in Shirkey v. Keokuk County, supra, it was the duty of the court to "direct a verdict in favor of the defendant as a matter of law." The trial court, in giving instruction No. 10, apparently refused to follow the Shirkey case and properly refused to submit the defense to the jury.

Because the case was tried on the theory that plaintiff had challenged the validity of the defense, there was no error in giving the instruction.

II. Appellant alleges the court erred in overruling his motion for a directed verdict because "only one conclusion could be arrived at from all the evidence in the case, and that is that the defendant was not guilty of any negligence whatsoever, that defendant was confronted with a sudden emergency and did, according to the evidence, the only natural and reasonable thing that any ordinary and reasonable and prudent man would have done under the same circumstances."

Appellant states:

"The evidence conclusively further shows that the deceased was hiding and concealing herself either out and in the culvert or by or in the abutments or wings of this said culvert where she could not be seen by the defendant; and that the deceased suddenly and without any warning and without looking, darted out and jumped in front of defendant's approaching car and that defendant, at the very moment that he saw deceased, slammed on his brakes, and turned to the left in his attempt to avoid the girl and ran off the highway, into the ditch and up to the fence in an attempt to avoid her."

Defendant was driving north on primary highway No. 13 in Clayton County about 4:15 in the afternoon on October 22, 1936. The accident occurred about 25 feet north of a culvert under said highway. About 1,516 feet south of the culvert, an east and west road called St. Olaf Road crosses highway No. 13. There is a schoolhouse in the south-west corner of the intersection. Commencing about 700 feet north of the intersection, there is a slight down-grade for a distance of 816 feet to the box concrete culvert, which is 33 feet from end to end. The

opening is 3 feet square. The bottom of the culvert is 6 feet below the pavement. On the east side, two concrete wings extend out about 8 feet at an angle of 45 degrees to hold the dirt shoulder. The parapet made by the wings is about 1½ feet lower than the shoulder of the highway. The distance from the end of the north wing of the culvert to the east edge of the shoulder is 6 feet and the shoulder is 6 feet wide; that is, it is 12 feet from the end of the north wing to the pavement.

About 4:00 o'clock in the afternoon of October 22, 1936, a group of school children left the schoolhouse for their homes and were walking north on No. 13. There were four boys, the oldest being 13 years and the youngest 6 years old, and three girls, the deceased, LuNida Lenth, 10 years old, Mardella Kluth, 13 years old and Ella Henning, aged 7. The girls had preceded the boys and when they reached the culvert were quite a distance ahead of them. At the culvert, the girls, as they had several times done before, walked through the culvert from west to east. LuNida then crossed the road to the west side of the culvert. A little while later, the other two girls followed LuNida across the road. LuNida having again entered the culvert on the west side of the road, Mardella and Ella sat down on the edge of the culvert on the west side of the road to wait for her and the boys. They did not see her again until after she was struck down by defendant's automobile.

Eldean Schlake, a witness for the plaintiff, and the defendant are the only witnesses who testified about what occurred just prior to and at the time of the accident. Schlake, who was 13 years old at the time of the accident, testified substantially as follows:

The witness and the other boys were walking north on the west shoulder. When he first saw LuNida (after she had gone through the culvert the second time) she was coming up the bank on the east side of the road near the north wing of the culvert. At this time the witness testified he was on the west shoulder and about three-fourths of the way from the schoolhouse to the culvert, which means he first saw her when he was about 300 feet south of the culvert. When he thus observed her, defendant's car was "quite a ways back". He next saw her as she started across the parapet and shoulder to the west at a kind of a dog trot and "she didn't look one way or the other, just kept right on going". As defendant's car passed the witness he was

driving 70 miles per hour and increasing his speed and LuNida was then 60 feet ahead of the witness and near the center of the pavement. Defendant did not sound his horn. LuNida was going across the parapet, shoulder and pavement at a "little trot". Defendant slammed on the brakes about the same time he hit her.

Other evidence discloses that defendant's car left the west side of the pavement about 30 feet north of the culvert; that black marks on the pavement made by application of the brakes by defendant extended 78 feet south from the place it left the pavement, that is, the marks were first visible about 48 feet south of the culvert. These physical facts support the testimony of Schlake that appellant applied his brakes after he passed him and when he was less than 60 feet from LuNida. If appellant were driving 70 miles per hour, Schlake's statement that he applied the brakes about the same time he hit her would be substantially correct.

The jury could find from the above testimony that LuNida was plainly visible to the defendant for a distance of over 300 feet from the culvert and did not see her until within less than 60 feet from her. Schlake saw LuNida when he was over 300 feet south of the culvert. The view of the culvert is unobstructed to one approaching from the south for at least a thousand feet.

The testimony of Eldean Schlake justified the giving of the following instruction by the trial court:

"When a child under the age of 14 years is in plain view upon a street or public road, so that the driver of an automobile or other vehicle sees him, or in the exercise of ordinary care should see him, in time to reduce the speed of such vehicle and have such control thereof as to avoid coming into contact with such child, such driver of an automobile or other vehicle cannot assume that such child will not move from a position of safety outside of the pathway of such vehicle and into a place of danger in such pathway, but, on the contrary, such driver must realize that such child may act without any care and may suddenly and unexpectedly leave a place of safety and move into a place of danger in the pathway of such vehicle." See Webster v. Luckow, 219 Iowa 1048, at page 1056, 258 N. W. 685.

8

Defendant's version of the accident is found in his following testimony:

"Well, I was driving north. When I got over the brow of that little hill, whatever you call it, north of the school, I could see down into the hollow there, about 700 or 800 feet from the culvert. I saw some children, some boys, walking north on the left hand side and when I saw them I tapped my horn twice, put my foot on the brake and went along there, keeping an eye on those boys, there was nothing to be seen anywhere ahead of me. I saw nothing ahead of me. I looked ahead, there was nothing I could see except these boys to the left and when I sounded my horn they looked around, some of them did, and they stepped off the concrete on the shoulder. As I got up to them one of them waved something. I thought it was a dinner pail. I passed them I would judge about 80, 75 or 80 feet south of the spillway. When I come even with them or knew they wouldn't jump out, I kept seeing—well, when I got even with them or where I felt safe—I saw those boys and I turned to look ahead. I had my eye on them for a minute. All at once this little girl jumped up from the side right in front of my path. Immediately following that I whirled to the left and tried to avoid her but I didn't. I went into the ditch, I struck the fence, the front wheel went over the fence. It was a woven wire fence at the bottom, one or two wires on top. All the thought I had then was to get back. I went into the fence and I wanted to get back but I couldn't back out over the fence because the front wheels had gone over the fence, no way of backing away, so I drove into the field. I whirled to the right, thinking I would turn around.

"Well, I started to turn around, I went up a little grade, the ground was soft and I killed my motor. Then I jumped out of the car and went back. I applied my brakes as quick as I saw this child jump out from the shoulder in front of me, I applied my brakes and whirled to the left."

The witness testified that he was driving at a speed of 45 miles per hour. There was a conflict in the evidence and the trial court properly submitted to the jury the specification of negligence that defendant failed to exercise ordinary care in that he failed to see deceased in time to reduce the speed of his

car, and there was no error in overruling defendant's motion for directed verdict.

III. Another assignment of error is that defendant was entitled to a directed verdict because the deceased was guilty of contributory negligence as a matter of law, as the only cause of the accident was "the sudden and unforseeable darting onto the highway by deceased from her hiding place". Appellant further states:

"The evidence affirmatively and conclusively shows, as a matter of law, that the deceased was guilty of contributory negligence, that the girl was above the average in intelligence, that she had been using this road for four or five years and was familiar with it and even though she had been coached by the teacher and her parents to not use the highway for the purpose of playing and loitering, still she did so at the time in question knowing it was all wrong, and the girl was in fact a trespasser in the use she was making of the highway at the time."

The evidence reveals that LuNida, at the time of the accident, was 10 years of age, attended the 6th grade at school and had more than average intelligence; that her teacher and parents had instructed her to be careful on the highway.

It is the established rule of this state that a child under the age of 14 years is presumed to be incapable of contributory negligence and such presumption must be overcome by proof that, under all the facts and circumstances, the child did not exercise that degree of care and discretion ordinarily exercised by children of like age. Webster v. Luckow, 219 Iowa 1048, 258 N. W. 685; Johnston v. Delano, Receiver, 175 Iowa 498, 154 N. W. 1013.

That LuNida had been told to exercise care while on the highway and ran across the highway without looking in either direction would not establish contributory negligence as a matter of law. We recognize that "children are capricious; they act heedlessly without giving the slightest warning of their intentions. They dart here and there with the exuberance of youth". Webster v. Luckow, supra. It does not appear that LuNida did not look to the south prior to proceeding across the parapet and shoulder on to the pavement. Schlake testified that he saw her coming up the bank and from the time she started across she did not look one way or the other but "just kept right on

going''. The presumption is that LuNida was incapable of contributory negligence and whether or not defendant proved that she failed to exercise the care and discretion ordinarily exercised by children of a like age was, under the circumstances, clearly a question for the jury.

IV. Appellant alleges the court erred in not giving his requested instructions Nos. 4 and 5 which read:

No. 4. ''You are further instructed that if you find that LuNida Lenth was so concealed and that she suddenly ran upon the highway in front of the approaching car operated by the defendant, that then there was what is known in law as a sudden emergency created by the deceased and that the defendant would only be governed by ordinary care and that he would not be held to the highest degree of judgment, but would only be accountable for such care as the ordinarily reasonable and prudent man would have exercised under the same circumstances; that when a sudden emergency confronts a person in the operation of an automobile on the public highway, he cannot be held accountable for a mistake as it would appear after the accident has occurred, for the reason that there is not any time for the exercise of judgment.''

No. 5. ''The jury is further instructed that it cannot hold the defendant liable in this case on a theory which has no support in the evidence, nor can a jury speculate what might have happened if the defendant had done otherwise than he did do; no one knows what might have happened if the defendant had turned to the right instead of to the left, and there is no evidence here and by the very nature of the case there can be no evidence to prove what would have been the result then, and you cannot enter into any such speculation.''

Under defendant's theory, nothing he could have done would have avoided striking deceased and plaintiff does not claim appellant erred in judgment after the emergency arose. No complaint is made of what he did or did not do under the emergency. Defendant's theory of the accident is that LuNida was concealed under the culvert and suddenly ''as a flash darted out in front of my car''. He testified that she jumped from the side ''right in front of my path''.

The trial court gave instruction No. 11 which reads:

No. 11. ''You will consider all the evidence and circumstances shown in this case as to how LuNida Lenth got onto the

paved portion of the highway, as to whether or not she could have been seen by the defendant, in the exercise of ordinary care in driving on the highway from the south, and, if you find that LuNida Lenth came onto the paved portion of the highway in such a sudden way that the defendant, in the exercise of ordinary care, was unable to see her in time to reduce the speed of his car so that he would not strike her, then you will return a verdict for defendant.''

This instruction presented to the jury defendant's theory of the case and his defense and there was no error in refusing the requested instructions.

V. In instruction No. 17, the trial court, after stating that the jury should allow the plaintiff such sum as fairly represented the reasonable present value of the life of LuNida Lenth to her estate, had she lived, from the time she would arrive at the age of 21 years up until her death *all as shown by the evidence,* concludes the instruction with the following sentence:

''In determining the amount of damages which you allow plaintiff, if any, and in determining the expectancy of life of LuNida Lenth, you may take into consideration what the evidence shows as to the health, habits, appearance, education, experience, and *earning capacity* of LuNida Lenth at the time of her death.''

There was no evidence introduced of the earning capacity of LuNida at the time of her death and appellant claims that in permitting the jury to consider the earning capacity of this 10-year-old child at the time of her death, of which there was no evidence, the court committed reversible error.

Elements of damage of which there is no evidence should not be submitted to the jury. However, the trial court specifically stated in the instruction that the jury should allow such amount as was shown by the evidence. We are of the opinion that the probability that the jury assumed this 10-year-old child had an earning capacity at the time of her death, speculated on the amount, and considered her earning capacity in determining the present value of her estate is so remote that we are not disposed to reverse because of the error in submitting this element of damage, of which there was no evidence.

VI. Appellant also claims he was entitled to a new trial because the verdict of $6,000 was excessive and the result

of passion and prejudice. The trial court refused to interfere with the verdict. An examination of our prior decisions discloses that this court has not allowed a verdict for a child near the age of deceased in the amount rendered in this case to stand. See Allen v. Des Moines R. Co., 218 Iowa 286, 253 N. W. 143; Eginoire v. Union County, 112 Iowa 558, 84 N. W. 758; Hively v. Webster County, 117 Iowa 672, 91 N. W. 1041; Farrell v. Chicago, R. I. & P. R. Co., 123 Iowa 690, 99 N. W. 578; Ellis v. Republic Oil Co., 133 Iowa 11, 110 N. W. 20; Crawford v. McElhinney, 171 Iowa 606, 154 N. W. 310, Ann. Cas. 1917E, 221; McDowell v. Interstate Oil Company, 212 Iowa 1314, 237 N. W. 456; Raines v. Wilson, 213 Iowa 1251, 239 N. W. 36.

In view of our prior decisions, we are of the opinion that the verdict should be reduced to $4,500.

If the plaintiff-appellee shall file with the clerk of this court a remittitur in excess of the sum of $4,500 within 30 days from the filing of this opinion, judgment for the sum of $4,500 will be affirmed, otherwise the case is reversed.

We have carefully considered the remaining assignments of error and find no merit in them.—Affirmed on condition.

SAGER, C. J., and KINTZINGER, HAMILTON, MITCHELL, and MILLER, JJ., concur.

ANDERSON, J., dissents.

### SUPPLEMENTAL OPINION

RICHARDS, J.—Defendant's petition for rehearing having been granted, and the cause having been resubmitted, the majority of the court, not including the writer, has reached the conclusion that the prior opinion of this court, filed September 27, 1938, properly determined all matters involved on this appeal. Accordingly, said prior opinion modifying and affirming the judgment of the district court is confirmed and adopted as the opinion of this court upon resubmission.

OLIVER, C. J., and BLISS, HALE, HAMILTON, MITCHELL, and STIGER, JJ., concur.

SAGER, MILLER, and RICHARDS, JJ., dissent.