DUANE PASCHKA, by his next friend, ERWIN PASCHKA, Appellee, v. HELGA CARSTEN et al., Appellants.

No. 45831.

MAY 5, 1942.

1186

Senneff & Duncan and Breese & Cornwell, for appellants.

Murray H. Finley, for appellee.

WENNERSTRUM, J.—Plaintiff, a minor 6 years of age at the time of the injuries sustained by him which occasioned this litigation, claimed damages against the defendants, Helga Carsten and F. G. Hintzen, the driver and owner respectively of an automobile which the plaintiff claimed was negligently operated. The defendants denied any liability for the injuries received. Upon trial a verdict was returned for the plaintiff and judgment was thereafter entered. Defendants filed a motion for a new trial and exceptions to the instructions, which were overruled. The defendants have appealed.

As a basis for our further comments relative to this case, a summary of the facts as disclosed by the evidence is necessary.

On July 4, 1939, Helga Carsten was driving an automobile southeasterly on paved highway 65, outside the city limits of Mason City, Iowa. The car was owned by F. G. Hintzen. At the particular time of the injuries to the appellee it was about 7:30 p. m., the paving was dry, and it was still daylight. The driver was accompanied at that time by her two children, 5 and 6 years old, who were riding in the front seat with her. Shortly before she reached the point on the highway where appellee was injured, the rate of speed of the automobile was approximately 25 miles per hour. She first saw the appellee as she was driving southeasterly and when about a block away. At that time the appellee and his small sister, Hallie Lee Paschka, were halfway between a fence which runs along the highway and the southwest side of the highway proper. As the appellant Helga Carsten progressed further in her driving of the car the appellee started toward the pavement, and Mrs. Carsten then slowed down to about 20 miles per hour, and, according to her testimony, honked her horn. As to what then may have happened is disclosed by the cross-examination of Mrs. Carsten. She testified, concerning the facts as they developed and as she observed them, as follows:

"The boy came from half way between the fence and the west edge of the pavement toward the pavement and then stopped about two or three feet from the edge of the highway there. I

was then getting close to that cinder driveway, and had slowed down. I assumed that having stopped there, he wouldn't go on any farther toward the paving until after I had passed. I saw him look at my car when he stopped there and before he stopped. I didn't think it necessary to turn out as the boy was standing still. At the time I went by, the boy was about a foot and a half or two feet from the right or west curb of the pavement. The boy was standing still and looking at the car when he was two or three feet from the pavement, so I drove in a straight line at a speed of not more than twenty miles an hour. I don't know exactly how many feet it takes to stop the car going twenty miles per hour, but with good brakes and a dry road, you can stop the car in a very short distance at that speed.

"I sounded the horn when the boy stopped, and I was a little less than a block away, and I also honked the horn as I got closer. I honked it more than once. I sounded the horn twice on each of two occasions as I approached the boy. * * *

"After the front part of my car passed the boy, I didn't look toward him as he had been standing there off the pavement looking at me as I came closer to him and was standing there as I passed by him in the front seat of the car. I looked at the boy until the front part of the car was right about even with or just past the boy. I know that the front part of the car did not hit the boy as I saw the boy on the side of the pavement as the front part of the car passed him. I thought it was safe to pass the boy as I did while he was standing there looking toward the car. I was slowing up as I was going toward him, but he saw the car coming and looked at it and stood still there and there wasn't any reason for me to think that he would come nearer the pavement. Naturally, the boy would see the car and couldn't help seeing it when he looked up the highway and right at it and stopped and continued to look at the car after he had stopped. I don't understand how there would be any way that he could help but see it, and I know that he did from his actions because he looked up the highway right at it and then stopped and then continued to look right at it so I feel sure in saying that I know he saw it.

"In slowing down I took my foot off the accelerator and put it on the brake, but I didn't keep my foot on the brake as I saw

the boy looking my way. As I passed the boy I didn't have my foot either on the brake or the foot feed. I didn't go over two car lengths after I heard his contact with the car. At that time the roads were dry. I am certain that it was some portion of the rear part of the car with which the boy came in contact, although I didn't see him come in contact with the car. I had the car under proper control. There was no car approaching at the time of the accident within about a block and a half.''

It is the appellants' contention that the appellee ran into the side of the car, and that by reason of that fact there was no negligence on the part of the appellant driver.

It is the claim of the appellee, as evidenced by proceedings at the trial, that the appellant driver either negligently operated the car as she passed the appellee, or that the appellee was struck by the front of the appellant's car.

■ Hallie Lee Paschka, a sister of the appellee, and 10 years of age at the time of the trial, gave testimony which somewhat bore out the contention of the appellee that the child was struck by the front of the car. In her original direct examination she testified, in substance, as follows:

''Duane was standing close to the pavement when he was hit. I think he was standing with one foot on the pavement and one foot on the gravel or shoulder. I don't remember which foot was on the gravel. It was on the little part that slopes up from the pavement that cars run on or the part that kind of slants up from the flat part.''

In answer to an inquiry of counsel for the plaintiff regarding what she saw at the time that her brother was knocked down, this witness then answered:

''I wasn't looking right at him then, and I wasn't paying any attention to him.''

She further testified that she saw the car coming that knocked him down and that she did not hear the car honk its horn. She further stated at that time that she did not see the car strike Duane.

Several questions were asked of the witness following the

examination just quoted, but to each of them the witness gave no answer. At that time a recess was taken at the suggestion of the court.

After the recess the witness was interrogated regarding what she saw when Duane was standing with one foot on the shoulder and the other one on the gravel, and she then stated that she turned around and looked back at him and saw that he was struck by the front end of the car. She further testified that after she had looked away the first time and looked back she then saw her brother hit by the front end of the car.

On cross-examination she testified that she was 10 years of age and at the time of the accident she was 8 years of age. She again testified:

"I was looking the other way, and then I turned around and saw that he was hit by the front end of the car, that he was hit by the front fender."

Several other questions were asked on cross-examination by counsel for appellants, but to these the witness gave no answer and cried while on the witness stand.

There was a motion made on behalf of the appellants to strike the testimony of this last witness as being incompetent and improper in that it was shown that the witness had no real recollection of anything which took place, and further, because of her immaturity and the length of time since the transaction of the affairs concerning which she was testifying, she was unable to properly relate the true situation and the testimony of this witness should be stricken. This motion was overruled, the court stating that the weight of the testimony was a matter for the jury.

There was other testimony presented, both on behalf of the appellee and the appellants, as to the circumstances that occasioned the injury to the appellee and as to the extent of the injuries, but we have set out the necessary facts that bear upon the questions raised on this appeal.

The appellants assign the following errors as grounds for reversal: (1) That the court erred in overruling appellants' motion for a directed verdict at the close of all the testimony, and they contend that the doctrine of general negligence, or res

ipsa loquitur, is not applicable to the facts in this case as disclosed by the evidence; (2) that the court erred in giving an instruction relative to "the mere happening of an accident," and further complaint is made of this instruction wherein comment is made concerning the fact that the burden of proof is on the appellee to show "that such negligent operation of said automobile on her part at said time and place was the proximate cause, or a concurring proximate cause, of the injuries sustained by plaintiff;" (3) that the court erred in giving a further instruction which, in part, stated, "and a concurring proximate cause is one which concurs directly in producing injury, and without which such injury would not have occurred," because the issue of concurring cause was not pleaded and there is no evidence to support it; (4) that the court erred in refusing to strike the testimony of Hallie Lee Paschka, the sister of the appellee; (5) that the court erred in giving a further instruction which in part was as follows:

"Motorists must take into account the disposition of children and take the precaution which the situation requires, in the exercise of ordinary care. Whether or not, as shown by the evidence, said defendant did or did not at said time and place, exercise reasonable and ordinary care, or take such precaution as ordinary care required that she should take, *by reducing the speed of her car so that she might, in the exercise of reasonable care have stopped the same promptly, or turned in her course, if necessary, in order to avoid striking the plaintiff or preventing him from coming in contact with her car,* are questions for determination by the jury from the evidence introduced" (italics supplied) ; (6) that the court erred in failing to give appellants' requested instruction which was to the effect that if it was found from the evidence that when the front end of appellants' automobile reached a point opposite the place where appellee was and had not started to move therefrom, and that appellants' automobile did not run into appellee but that appellee was injured by running into the side or rear side of appellants' automobile, the verdict must be for the appellants.

It is apparent that the principal contention of the appellants is that they cannot in any way be held liable for any injury that may have resulted to the appellee by reason of the fact that he

ran into the side of the car, if he did, and that any instruction bearing upon that theory of the case was improperly given. It is further contended that the testimony of the witness Hallie Lee Paschka, by reason of its indefinite nature, was incompetent and it should have been stricken.

I. Relative to the question raised by a motion to strike the testimony of Hallie Lee Paschka, we hold, as did the trial court, that the consideration that should be given this child's testimony was a matter for the jury. Consequently, it is our conclusion that the ruling of the court was proper in not sustaining the motion to strike this witness's testimony.

II. Upon the question as to the duty of a driver of an automobile in relation to the care which such driver should give to a child under 14 years of age, who is on the highway or adjacent to it, this court, commencing with the case of Webster v. Luckow, 219 Iowa 1048, 1056, 258 N. W. 685, 689, has adhered to the view that a driver of an automobile cannot anticipate what a child of tender years will do. We there said:

"We now hold that, when a child under the age of 14 years is in plain view upon a street or public road, so that the driver of an automobile or other vehicle sees him, or in the exercise of ordinary care should see him, in time to reduce the speed of such vehicle and have such control thereof as to avoid coming into contact with such child, such driver of an automobile or other vehicle cannot assume that such child will not move from a position of safety outside of the pathway of such vehicle and into a place of danger in such pathway, but, on the contrary, such driver must realize that such child may act without any care and may suddenly and unexpectedly leave a place of safety and move into a place of danger in the pathway of such vehicle."

This same reasoning and holding was followed in the case of Darr v. Porte, 220 Iowa 751, 754, 755, 263 N. W. 240, 241. We there said:

"The defendant in this case saw these children, saw that they were of tender years, saw that they wanted to cross the road and that they were poised there ready to cross, and that one of the older children was making some effort to restrain the younger ones from going out onto the paving. He had no right

to assume that they would remain in a place of safety. He should anticipate that children of that age and under such circumstances are likely to do the very thing the plaintiff in this case apparently did do. He should, therefore, have continued to keep a lookout for these children, to be on the alert to avoid injury to them, and to reduce his speed when passing them so as to be in a position to stop promptly or to turn from his course to avoid striking them, or any of them, if they should run into the path of his car. The degree of care which the defendant was required to exercise in this situation was commensurate with the obvious danger, and one of the obvious dangers was the disposition of children of tender years, seeking to get across the highway, to suddenly run across in response to impulse and without the exercise of judgment or caution. Motorists must take into account this disposition of children of tender years, and take the precautions in passing them which that situation requires. There is evidence in this case that no precautions whatever were taken by the defendant after he warned the children when 250 or 300 feet from them by sounding his horn. The fact that they then stopped would not justify him in abandoning all further care for their safety. A jury might have found, under the rule of the Webster case, that the defendant failed to use the degree of care required of him under the circumstances. A jury might have found, also, that, if defendant had been in the exercise of the proper care, he could have avoided striking this child, and that his failure to exercise such care was the proximate cause of the injury which this child sustained.

''Because of plaintiff's tender years, no question of contributory negligence is involved.''

A holding to this same effect is found in the case of Lenth v. Schug, 226 Iowa 1, 281 N. W. 510, 287 N. W. 596. See, also, Noland v. Kyar, 228 Iowa 1006, 292 N. W. 810.

In the case of Messer v. Gentry, 220 Mo. App. 1294, 1300, 290 S. W. 1014, 1016, where it developed that a minor child ran against the side of an automobile, the Missouri court said:

''It was the duty of the defendant to exercise the highest degree of care for the safety of the child from the time it first came into his view and no instruction which omitted that require-

ment on his part should have been given. This instruction also excuses defendant if this child, which as already said, was irresponsible, ran into the rear part of defendant's car. That is equivalent to saying that if the child was guilty of contributory negligence it could not recover, an impossible doctrine under the facts in this case. If defendant's negligence placed his car where the child ran against it, he would be responsible the same as if he had struck the child with the front of the car.''

It has heretofore been noted that the appellants claimed error in the giving of the instruction referred to in their fifth assignment of error, and particularly that part which has heretofore been set out. It is contended that this instruction was erroneous in that the court made no distinction between a situation where the child moves in front of a moving car or where it runs into the side of a moving car after the driver has partially passed it.

It should be kept in mind that a child of immature years, such as was the appellee in this case, cannot be held guilty of contributory negligence. The fact that the child ran into the side of an automobile does not relieve the appellants of liability for injuries received by the appellee if the driver of the automobile, in the exercise of reasonable and ordinary care, did not take such precaution as ordinary care required by reducing the speed, or turning the course of the automobile to avoid the child's coming in contact with the car. The evidence shows that although the appellant driver was not driving more than 20 miles per hour at the time of the injury she proceeded along her regular course and was within 18 inches or 2 feet from the edge of the paving and near where the child was standing. It was also shown that she did not in any way change the course of her driving or seek in any way to prevent the child from coming in contact with the car. Because of her failure to do this, we hold that the instruction as given by the trial court was proper in the light of our recent opinions, and that it was proper for the jury to pass upon the claimed negligence as submitted by the court.

Our comments upon the points discussed in this opinion cover the claimed errors as assigned by the appellants and do not necessitate further comment thereon.

We have made considerable independent research of the

authorities, and from a study of these cases have concluded that the trial court was correct in the manner in which it submitted the case to the jury, in the instructions given, and in its rulings on the several matters of which complaint has been made. We therefore hold that the case was fairly and properly tried and that the trial court should be, and it is, affirmed.—Affirmed.

All JUSTICES concur, except BLISS, C. J., who takes no part.