THOMAS UDELL, a minor, by his father, THOMAS C. UDELL, individually and as next friend, appellant, v. CLIFFORD T. PETERSON, appellee.

No. 51528.

(Reported in 133 N.W.2d 119)

February 9, 1965.

Johansen & Mahr, of Sioux City; for appellant.

Gleysteen, Nelson, Harper, Kunze & Eidsmoe, of Sioux City, for appellee.

THORNTON, J.—Plaintiff father brings this action in two divisions, one on behalf of his three-year-old son, Thomas, Jr., for injuries sustained, and the second on his own behalf for the expenses of a cure. The son will be referred to as plaintiff.

Plaintiff was struck by defendant's car in the street in front of his home on the east side of South Rustin Street in Sioux City.

The trial court directed a verdict for defendant after both sides rested because the evidence failed to show defendant was negligent and any negligence of defendant was the proximate cause of plaintiff's injuries.

Plaintiff appeals these questions, urging the sufficiency of the evidence. And he also urges certain colored photographs showing his injured condition were improperly excluded.

The evidence, viewed in the light most favorable to plaintiff, is as follows. Plaintiff was three years old and 37 to 38 inches tall at the time of the accident, June 6, 1962. He had been playing on the parking in front of his house on the east side of South Rustin Street in Sioux City. South Rustin Street runs north and south. He was struck by defendant's car in the street in front of his home. After the collision the rear of defendant's car was from 130 to 140 feet from the curbline of the intersecting street to the south where defendant turned onto South Rustin Street. Defendant's car was a 1955 Buick, which he testified was 20 feet long and seven feet wide. The defendant testified he could see two blocks ahead into South Rustin Street. No automobiles were parked on either side of the street, and there was no other traffic. Defendant had made one trip through the same block on South Rustin Street about an hour before the accident going south. At that time about ten children were playing foursquare in the street. One of these children, Richard Meek, 17 years old at the time of trial, was called as a witness by the plaintiff. He testified the children were playing foursquare about 50 to 60 feet north of the intersecting street to the south. He stated about an hour elapsed between defendant's first and second trips on South

Rustin Street and during that time plaintiff was between the parking and the children playing foursquare. Plaintiff wanted to play with the children playing foursquare but they chased him away. He played with a ball on the parking in front of his home.

The children playing foursquare separated, moving to each side of the street each time. On the second occasion defendant spoke to the Meek boy. The Meek boy testified:

"When Mr. Peterson made the remark 'This will be the last time coming through' he just glanced back. A couple of minutes or not quite a couple of minutes passed between the time I last saw the Udell boy standing on the parking [the parking on the east side of the street in front of the Udell home] * * * and the time Mr. Peterson made this remark to me. Mr. Peterson was 8 to 11 feet from me, seated in his car, when he made the remark to me and after that we resumed our game. We heard a thump and we all turned to see if he had hit the ball or something. I looked to see what Mr. Peterson hit and it looked like Thomas was or had been hooked onto the car and I ran over there to see what had happened. I then tried to get Thomas Udell from under the car. I slid under the car to free his foot which was caught on the under bracing of the car. Thomas was on the driver's side by the back wheel. The distance between the rear of Mr. Peterson's car where it stopped after the accident and the place where Mr. Peterson addressed me when his car was traveling north on South Rustin Street just before the accident is approximately 50—between 55 and 58 feet. After Mr. Peterson made the remark to me that this would be the last time through he gradually accelerated his car. Mr. Peterson just made a quick glance when he said it, and looked back and went on up the street."

On cross-examination Richard Meek testified concerning the whereabouts of plaintiff. He stated that at the time defendant came through the first time plaintiff was playing on the parking, "* * * all the time during this hour [between defendant's trips] the Udell boy was between the parking and us, * * *. He was half way between the curb and the sidewalk. * * * I did not see Thomas Udell, Jr. when Mr. Peterson came back the second time. When Mr. Peterson came through we yelled to Tommy Udell to

get back because he was kind of close to the curb and this was the time Mr. Peterson came through the second time. I yelled at Tommy to get back when Mr. Peterson came through the second time. When I called to Tommy he obeyed me and moved back to the sidewalk line and did not go beyond the sidewalk line. Then I saw Mr. Peterson come onto Rustin Street * * *. Mr. Peterson was going very slow, just barely moving along at that time and he came into the middle of Rustin Street because we were on both sides of the street. * *. * we all fanned out so that some of the children were on the east side of the street and some were on the west side of the street. I was on the parking on the west side of the street. * * * Thomas Udell was the only other person in the vicinity except our group and he was up there and playing by himself. Thomas Udell was between 50 to 60 feet down the street from me when I yelled at him to get back from the street and he obeyed me, but after that I paid no attention to him. As I remember he had his ball in his hand at that time, * * *. The front end of the car, at the time that I came up to it after the accident happened, was in front of where Tommy would have been standing."

Defendant testified he stopped his car about 30 seconds for the children to clear the street when he spoke to Richard Meek and that he had only traveled 15 feet when he heard the thud. He was traveling no more than five m.p.h. And, "When I started my car up I looked straight forward and I didn't see anything in front of my car. * *.* I don't recall seeing any children on the parking in the area as I started my car up * * *. I was concerned with the children in the street." He also testified he would not have any trouble seeing an object 37 or 38 inches tall over the hood of his car.

Defendant took plaintiff and his father to the hospital. The father testified defendant said, " 'I never saw the boy. If I had only seen him it wouldn't have happened. I never saw him'."

I. Decision here rests on whether defendant in the exercise of reasonable care should have seen plaintiff in time to do anything to avoid coming in contact with him.

Plaintiff urges the rule announced in Webster v. Luckow, 219 Iowa 1048, 1056, 258 N.W. 685, 689:

"We now hold that, when a child under the age of 14 years is in plain view upon a street or public road, so that the driver of an automobile or other vehicle sees him, or in the exercise of ordinary care should see him, in time to reduce the speed of such vehicle and have such control thereof as to avoid coming into contact with such child, such driver of an automobile or other vehicle cannot assume that such child will not move from a position of safety outside of the pathway of such vehicle and into a place of danger in such pathway, but, on the contrary, such driver must realize that such child may act without any care and may suddenly and unexpectedly leave a place of safety and move into a place of danger in the pathway of such vehicle."

The foregoing has been reaffirmed and followed in Schlotterbeck v. Anderson, 238 Iowa 208, 26 N.W.2d 340; Hampton v. Burrell, 236 Iowa 79, 17 N.W.2d 110; Paschka v. Carsten, 231 Iowa 1185, 3 N.W.2d 542; Luse v. Nickoley, 231 Iowa 259, 1 N.W.2d 205; McMahon v. Rauch, 230 Iowa 674, 298 N.W. 908; Lenth v. Schug, 226 Iowa 1, 281 N.W. 510, 287 N.W. 596; and Darr v. Porte, 220 Iowa 751, 263 N.W. 240.

Defendant urges the turning of his head to the left to speak to Richard Meek could not constitute negligence and that there is no evidence that when defendant approached the group or passed between them that the plaintiff was visible or by reasonable care could have been seen by defendant. Also that though he might be required to be on the lookout for impulsive acts on the part of members of the group through which he was passing there was no evidence plaintiff was a part of the group.

The testimony of Richard Meek is conflicting in some respects. He used the term, "not quite a couple of minutes passed", to indicate the time between when he last saw plaintiff and defendant spoke to him. That he used that term to indicate a short space of time is a proper inference in view of his other testimony. His other testimony shows he called to plaintiff to get back, at the time defendant turned into South Rustin Street. From the intersection to where Richard Meek was playing could properly be found not to be more than 70 to 80 feet. And plaintiff was 50 to 60 feet farther up the street on the parking on the other side.

No reason appears why defendant could not see plaintiff playing with a ball at that time. According to defendant's testimony he drove slowly down the middle of the street. The street was 25½ feet wide. This would leave about nine feet of pavement on each side of his car. He did say, "I didn't see the parking. I was watching the street." It is also true that between the time defendant turned into South Rustin Street until he heard the "thud" plaintiff moved from the parking into the street.

 There is no showing of defendant's speed from the corner to when he spoke to Richard Meek. He did say he was traveling no more than five m.p.h. when he heard the thud. He traveled some 130 to 140 feet from the corner until he struck plaintiff. When defendant turned into the street the jury could properly find plaintiff was in a position where defendant in the exercise of reasonable care should have seen him, that he was plainly visible. The duty to look implies the duty to see what is plainly visible. Hampton v. Burrell, 236 Iowa 79, 82, 17 N.W.2d 110. Once it is determined the jury could properly find defendant in the exercise of reasonable care should have seen plaintiff as he started north it cannot be held as a matter of law he owed no further duty to plaintiff. The fact no one testified to plaintiff's whereabouts at the time defendant spoke to Richard Meek does not help him. At that time defendant knew the children playing foursquare were in the street and he should have known plaintiff was on the parking playing with a ball. He cannot forget or disregard this fact. "* * *, such driver must realize that such child may act without any care and may suddenly and unexpectedly leave a place of safety and move into a place of danger in the pathway of such vehicle." Webster v. Luckow, supra.

The fact plaintiff was not playing foursquare with the other children does not change defendant's duty. The jury could properly find that when defendant started north he should have seen all of them, those playing foursquare and plaintiff some 50 feet farther north, and taken steps to avoid injury to all of them which would include continued watchfulness to see whether any of them might suddenly and unexpectedly leave a place of safety and move into his pathway. See Darr v. Porte, 220 Iowa 751,

263 N.W. 240; and Paschka v. Carsten, 231 Iowa 1185, 3 N.W.2d 542.

■ As in McMahon v. Rauch, 230 Iowa 674, 298 N.W. 908, the only explanation defendant makes is he did not see plaintiff. And it should be pointed out the fact plaintiff may have run into the street does not as a matter of law relieve defendant of his duty. See McMahon v. Rauch and Hampton v. Burrell, both supra. Or that he was struck by or ran into the side of the car. Paschka v. Carsten, 231 Iowa 1185, 3 N.W.2d 542.

It should be pointed out, if plaintiff had been the only child playing in the street, and the facts otherwise the same, under the rule of Webster v. Luckow, supra, a case for the jury has been made. The other children, within 50 feet of plaintiff and between him and defendant, increase defendant's burden of lookout, but the presence of others does not relieve him of this duty. We cannot so hold as a matter of law. On the other hand the jury might well find defendant's driving constituted due care under the circumstances.

We think whether defendant in the exercise of reasonable care should have seen plaintiff on the parking when he turned into South Rustin Street or at anytime as he drove north is a question for the jury to determine. If he should have seen him and did not, he has failed to keep a proper lookout.

■ II. Likewise he has the same duty of continued lookout and to operate his car to avoid injuring plaintiff which may properly include sounding his horn. See section 321.329, Code of Iowa, 1962, "* * * every driver * * * shall give warning by sounding the horn when necessary * * *", and section 321.432, Code of Iowa, 1962, "* * * The driver of a motor vehicle shall when reasonably necessary to insure safe operation give audible warning with his horn * * *."

The defendant seeks to avoid the necessity of sounding his horn because he did not see plaintiff. He cannot be relieved of one duty because he failed to perform another. The jury might well find sounding a horn was necessary under the circumstances. Coulthard v. Keenan, 256 Iowa 890, 897, 129 N.W.2d 597, 601; and Nichols v. Snyder, 247 Iowa 1302, 78 N.W.2d 836, and citations.

482

■ III. Of course defendant's negligence must be the proximate cause of the injury, even though this three-year-old plaintiff is presumed to be free from contributory negligence. Noble v. Edberg, 250 Iowa 1331, 98 N.W.2d 741.

■ Generally questions of proximate cause are for the jury and it is only in exceptional cases such may be decided as a matter of law. No citation of authority is necessary. See rule 344 (f)10, Rules of Civil Procedure. This case is not exceptional. Certainly the jury could find this accident would not have happened if defendant had seen plaintiff, or if he had taken any action to avoid or warn plaintiff.

Defendant urges Barryhill v. United States, 300 F.2d 690 (8 Cir. 1962), as an analogous case. In Barryhill a five and one-half-year-old girl was struck by a mail truck and died of the injuries. The federal district court decided as a question of fact plaintiff had not established by a preponderance of the evidence the driver was guilty of negligence. In the course of the opinion it is pointed out the driver saw the girl swinging on a swing in a playground across the street from the mailbox where the driver stopped, that the first time he saw her "near the street" or knew she was in the vicinity of the truck was after the accident. It is further pointed out there was no evidence establishing how, when or where the driver could by the exercise of reasonable care have discovered her peril and none he had any reason to assume the girl was in close proximity to the truck.

In this case the jury could properly find at the time defendant turned into South Rustin Street plaintiff was playing with a ball on the parking 140 feet away and plainly visible to defendant. Plaintiff was in a position where defendant in the exercise of reasonable care should have seen him. See Lenth v. Schug, supra, at pages 6 and 7 of 226 Iowa.

■ IV. Plaintiff offered in evidence three colored photographs of plaintiff showing his condition while in the hospital. The pictures were taken on June 11, 1962, five days after the collision. The photographer testified, "The photographs marked Exhibits 12, 13 and 14 truly and accurately depict what I saw when I took the photographs of the Udell boy." This is sufficient foundation, it is testimony of a witness qualified by personal

observation that the exhibits accurately show the condition they purport to show. Sections 726, 727 and 728, pages 153, 154, Wigmore's Code of Evidence; Law v. Hemmingsen, 249 Iowa 820, 833, 834, 89 N.W.2d 386, 395, 396; and Coonley v. Lowden, 234 Iowa 731, 741–744, 12 N.W.2d 870. The ruling of the trial court that no proper foundation was laid for the admission of the exhibits cannot be upheld as a fair exercise of discretion. Pictures showing the extent of plaintiff's injuries are admissible on the question of damages. The exhibits have not been certified to this court, but in the event they do indicate plaintiff was dragged, as contended by plaintiff, they are admissible for such purpose. The fact pictures may be gruesome or tend to create sympathy does not render them inadmissible, if there is a just reason for their admission. Perry v. Eblen, 250 Iowa 1338, 1345, 98 N.W.2d 832, 836; and State v. Triplett, 248 Iowa 339, 350, 79 N.W.2d 391, 397.

The case is reversed and remanded for a new trial.—Reversed and remanded.

All JUSTICES concur.