**James W. JOHNSON, Individually and as natural father of Jesse W. Johnson, Appellant,**

v.

**Richard Lee SVOBODA, Appellee.**

**Jane JOHNSON, Administrator of the Estate of Jesse W. Johnson, Deceased, Appellant,**

v.

**Richard Lee SVOBODA, Appellee.**

No. 59536.

Supreme Court of Iowa.

Dec. 21, 1977.

Shea, Jackson & Irvine, Cedar Rapids, for appellants.

Wadsworth, Elderkin, Pirnie & Von Lackum by D. M. Elderkin and David A. Elderkin, Cedar Rapids, for appellee.

Heard by MOORE, C. J., and LeGRAND, REES, UHLENHOPP and McCORMICK, JJ.

UHLENHOPP, Justice.

This appeal involves actions by a parent and a personal representative for damages arising from the death of a five-year-old child. The parties waived a jury and tried the actions to the trial court, which found for defendant Richard Lee Svoboda.

Svoboda drove a school bus east on a flat, straight, two-lane blacktop road in Cedar Rapids, Iowa. He stopped at Turner's Lane. Four schoolchildren on the bus lived south of the road on that lane and two children lived north of the road on a shorter lane. The door on the bus was on the right side at the front.

The four Turner's Lane children disembarked and started directly down their lane. The other two children, Jimmy Johnson, 7,

and Jesse W. Johnson, 5, also got out. They started around the front of the bus toward their lane, which was a little to the rear of the bus.

From that point the evidence introduced by the two sides is diametrically opposed. According to Jimmy Johnson, he and his brother Jesse waited at the left-front corner of the bus for an approaching yellow Toyota to stop. The bus then started up, Jimmy escaped, but the bus struck and ran over Jesse. Jay Wallander, who testified he approached in the opposite lane of traffic, corroborated Jimmy's testimony.

On the other hand, the trial court in its findings upheld the version of the accident given in Svoboda's evidence, as follows.

Kim Tyrrell, another pupil, sat behind the bus driver. She testified:

Q. Did you see where Jesse and Jimmy went when they got off the bus? A. Yes.

Q. And where did they go? A. They went around the bus to their house. . . .

Q. Where was their house? Was it across the road? A. Yes.

Q. Okay, did Jesse have anything in his hand at this time? A. Yes.

Q. What was that? A. Paper.

Q. And did you see the two boys get fully across the road? A. Yes.

Q. And what, if anything, happened then? A. A piece of paper blew out of his hand, Jesse's hand.

Q. This is a piece of paper he was holding at the time? A. Yes.

Q. And what happened to the piece of paper? A. It blew across the street.

Q. And what, if anything, did Jesse do then? A. He went chasing after it.

Q. And did he come back across the street? A. I don't remember.

Q. What happened after this? A. He got ran over.

Q. How, did the bus driver pull forward with the bus? A. Yes.

Q. Did you feel anything when the bus went forward? A. A bump.

Q. And where did you feel the bump in the bus? A. At the rear.

She testified more specifically as to Jesse's location before he ran back:

Q. Where did you see Jesse? A. He was standing right here.

Q. On the porch? A. By it. . . .

Q. And then you saw him run back, is that right? A. Yes. . . .

Q. Did you see Jesse by his porch? A. Yes, by it. . . .

Q. And then the bus had waited there until he got to the porch, is that right? A. Yes.

Gary Albertson lived on Turner's Lane. He testified he was standing by his house with workmen, and further:

Q. Did you observe the two Johnson boys getting off the bus? A. Yes, I did.

Q. And where did they go when they got off the bus? A. They got off the bus—well, my child and the Turner children continued down the lane and they walked around the front of the school bus.

Q. Who went across the front of the school bus? A. The two Johnson children.

Q. And where did they go then? A. After they got around the front of the school bus I can't see them until they get clear across the road, almost clear across the road.

Q. So you lost sight of them at that time? A. So I lost sight of them at that time.

Q. Did you see them again after that? A. Yes.

Q. And where were they at this time? A. They were either in their yard or in the near vicinity of it. They should have been off the traveled portion of the roadway by then. . . .

Q. Did you see both boys across the roadway? A. Yes.

Q. And what did you see then? A. Well, at that time I turned to talk to the two gentlemen that were working on my house. . . .

Q. Now, did you at any time see any school paper anywhere near the scene of the accident? A. After the accident had happened I saw one laying on the lane.

Q. All right. A. On the south side of the school bus.

Deanna Glover was another pupil on the bus. She sat over the back wheel. She testified:

Q. And do you remember seeing Jesse and Jimmy Johnson on that day get off the bus? A. Yes. . . .

Q. And where did they go when they got off the bus? A. They went across the street. . . .

Q. Did you see them cross the road over to the other side? A. Yes.

Q. And how far over were they, can you recall? Were they right on the roadway, shoulder, going up along the edge? A. They were on the shoulder.

Q. Which way were they heading? A. Toward the house.

Defendant Svoboda testified he originally turned on his yellow flashers, came to a stop at Turner's Lane, checked for cars, and pulled out the stop sign which turns on the red flashers. He had left and right rear-view mirrors in which he could see down both sides of the bus, plus a convex mirror forward which permitted him to check for pupils walking across the front of the bus.

Svoboda opened the door and the children got off. He testified:

Q. All right, did the Johnson boys get off first or last? A. They got off near the front, first or second or third.

Q. Did you watch them after they got off? A. Yes, I did.

Q. And where did they go? A. They sort of trotted around the front of the bus and last time I observed them they were going by the left front corner of the bus, starting across the other lane of traffic.

Q. And you watched them until they got to that point? A. Yes.

Q. Were they walking or running at this time? A. They were sort of trotting. They were moving right along.

Q. Now, did you then look for the other children that you had on? A. Yes, I did. . . .

Q. All right, did you then look back to see whether the Johnson boys were across the road? A. Yes, I did.

Q. And what did you see then? A. I looked in the mirror to check across the front of the bus and I couldn't see them. I looked out to the left, I couldn't see them. I looked down the left rear mirror and I couldn't see them.

Q. Okay, did you at that time check for traffic? A. Yes, I did. . . .

Q. Now, as you started forward with the bus, what happened? A. I moved forward about two lengths, two-thirds of a bus length and I felt the left rear portion of the bus raise up. As soon as that happened I stopped, put the bus in neutral, put on the emergency brake, told the children to stay in the bus, then I ran around the back. . . .

Q. Well, I am asking you what point on the roadway did they—what point were the Johnson boys with reference to the mid-center line of the roadway were they when you last saw them? A. Just north of the center line.

In the occurrence, Jesse Johnson was run over by the bus and killed.

In the present wrongful death actions, the trial court acting as fact-finder found that the accident happened as testified by the defense witnesses, with Jesse run over by the left rear dual wheels, and that plaintiffs did not prove by a preponderance of the evidence that Svoboda was negligent. The court therefore dismissed plaintiffs' petitions. Plaintiffs appealed.

In their appeal, plaintiffs present alternative contentions: (1) the trial court's finding is not supported by substantial evidence that Jesse crossed over the road to his yard and then chased a paper back to the bus, but (2) conceding such finding is supported by substantial evidence, the court nevertheless erred in finding plaintiffs did not prove by a preponderance of the evidence that Svoboda was negligent. In deciding the case we assume arguendo that if Svoboda

was negligent, his negligence was a legal cause of Jesse's death. See Restatement, Torts 2d § 281(c).

I. *Substantial Evidence?* The case was tried by ordinary proceedings and we do not review it de novo; the trial court's fact findings bind us if supported by substantial evidence. Rule 14(f)(1), Rules of Appellate Procedure; *Grefe v. Ross*, 231 N.W.2d 863 (Iowa).

From the testimony we have quoted, the trial court's finding that Jesse went to his yard and then chased a paper back to the bus manifestly has substantial evidentiary support. Plaintiffs argue with vigor that the court should have found the other way, but their assertions are in the nature of jury argument. We do not find merit in their first contention.

II. *Svoboda Negligent?* As to plaintiffs' contention that Svoboda was negligent even if Jesse was in his yard and then ran back to the side of the bus, two factors must be borne in mind. One is that we are not dealing with a sustained motion for directed verdict against plaintiffs (motion to dismiss when no jury), but rather with a fact finding on the merits. The trial court did not sustain a defense motion to throw out plaintiffs' case for want of substantial evidence of negligence. Instead, the court heard and decided the negligence question as a jury would do, and then found that plaintiffs had not established negligence as a jury could do.

■ The other factor is that in this setting, plaintiffs cannot prevail merely by showing substantial evidence in the record of negligence on Svoboda's part; they must go farther and show that such evidence is so overwhelming that it establishes Svoboda's negligence as a matter of law. "When the trial court denies recovery because of a party's failure to carry his burden on an issue, we will not interfere unless we find the party carried his burden as a matter of law. The evidence in a party's favor must be so overwhelming that no other reasonable inference could be drawn. On review we examine the evidence in the light most favorable to the judgment." *Kurtenbach v.*

*TeKippe*, 260 N.W.2d 53, 54 (Iowa). See also *McCaull v. Universal Mfg. Co.*, 218 N.W.2d 592 (Iowa).

■ When evidence in a case discloses the participants to be a school-bus driver and a pupil-passenger, two questions arise. One question relates to the duration of that relationship, and the other relates to the measure of the bus driver's duty of care while the relationship subsists. As to duration, the relationship continues not only during the ride and until the pupil has alighted at the point of disembarkation but also, if the pupil must cross the road to the opposite side, until he has done so. Code 1975, § 321.372; *Archuleta v. Jacobs*, 43 N.M. 425, 94 P.2d 706; *Pratt v. Robinson*, 39 N.Y.2d 554, 384 N.Y.S.2d 749, 349 N.E.2d 849; *Green v. Mitchell County Bd. of Education*, 237 N.C. 336, 75 S.E.2d 129. As to the measure of the bus driver's care during the relationship, the usual rule applies exacting the care of an ordinarily prudent person under the circumstances—but those circumstances are different than in the usual situation for they include the fact that the safety of the pupil is in the driver's charge while the relationship lasts and the fact that the pupil is young. During the relationship the driver must therefore use the care that an ordinarily prudent bus operator would exercise in looking after the safety of a child in his charge of the age of the pupil involved. *Archuleta v. Jacobs*, supra; *Pratt v. Robinson*, supra; *Hawkins County v. Davis*, 216 Tenn. 262, 391 S.W.2d 658; 78 C.J.S. Schools and School Districts § 322 at 1338; Anno. 34 A.L.R.3d 1210, 1236–1242. Of course, if a violation of a provision of § 321.372 for the pupil's safety were shown, the violation would constitute negligence per se under the doctrine of *Kisling v. Thierman*, 214 Iowa 911, 243 N.W. 552.

Here the trial court found that the relationship of bus driver and passenger terminated when Jesse crossed the road and went into the safety of his yard. Substantial evidence supports this finding of the court.

But the trial court did not hold that Svoboda was absolved from all care thereafter. The court quoted the rule which applies to a driver when children are upon or in proximity to a highway and the driver sees the children or in the exercise of due care should see them. *Webster v. Luckow*, 219 Iowa 1048, 258 N.W. 685; *Noland v. Kyar*, 228 Iowa 1006, 292 N.W. 810 (driver saw children playing along highway shoulder); *Darr v. Porte*, 220 Iowa 751, 263 N.W. 240 (children in plain sight within three or four feet of paved portion of highway); *Westenberg v. Johnson*, 221 Iowa 134, 264 N.W. 18 (child in space between truck cab and box—no liability); *Lenth v. Schug*, 226 Iowa 1, 281 N.W. 510 (child plainly visible walking along highway); *McBride v. Stewart*, 227 Iowa 1273, 290 N.W. 700 (child coasted out from snowbank—no liability); *Chipokas v. Peterson*, 219 Iowa 1072, 260 N.W. 37 (child ran out from parked car—no requirement driver anticipate); *Westman v. Bingham*, 230 Iowa 1298, 300 N.W. 525 (driver saw child riding bicycle in same direction); *Paschka v. Carsten*, 231 Iowa 1185, 3 N.W.2d 542 (driver saw child standing at edge of pavement); *Schlotterbeck v. Anderson*, 238 Iowa 208, 26 N.W.2d 340 (child in plain view in street); *Tuthill v. Alden*, 239 Iowa 181, 30 N.W.2d 726 (driver saw child on bicycle); *Ritter v. Andrews Concrete Products & Supply Co.*, 250 Iowa 297, 93 N.W.2d 787 (same); *Noble v. Edberg*, 250 Iowa 1331, 98 N.W.2d 741 (child in view playing in intersection); *Udell v. Peterson*, 257 Iowa 474, 133 N.W.2d 119 (children in plain sight playing in street); *Davis v. Gatewood*, 228 N.W.2d 84 (Iowa) (child on bicycle emerged at high speed from intersecting street—no liability).

Again we have the distinction between establishing a fact issue and establishing negligence as a matter of law. After citing and quoting from *Webster v. Luckow*, the trial court held on the merits that plaintiffs did not establish negligence by a preponderance of the evidence here. To secure a reversal at our hands, plaintiffs must now establish that negligence appeared as a matter of law. On this record we cannot so hold. Plaintiffs did not establish Svoboda's negligence so overwhelmingly that a contrary verdict or finding could not stand. Svoboda let the children out, saw some of them start down Turner's Lane, and saw the other two go around the front of the bus and start across the road. The latter children, as the trial court found, crossed the road and proceeded toward their house until Jesse was by the porch. Svoboda looked left for the two boys and, through his mirrors, checked across the front of the bus and along the left side. He could not see them. He looked for traffic, and started up. At some point Jesse ran back and got under the left wheel as the bus was leaving.

Svoboda did not see Jesse return. We need not say whether the trial court, acting as the jury, could have found Svoboda negligent in failing to see Jesse chase the paper back, but we do hold that the evidence did not establish failure to maintain a reasonable lookout so overwhelmingly that it required a jury or trial court as fact finder to find Svoboda negligent.

Whether given conduct is "reasonable" is not ordinarily black or white. Hence, whether an individual maintained a "reasonable" lookout is usually determinable as a factual rather than as a legal matter. "Wherever the evidence is conflicting or different inferences may reasonably be drawn therefrom, it is for the jury, or for the trial court in actions tried without a jury, to determine whether the driver of the vehicle causing the injury was keeping a reasonably careful lookout at the time of the accident." 61 C.J.S. Motor Vehicles § 526(11) at 879. See e. g. *Udell v. Peterson*, 257 Iowa 474, 481, 133 N.W.2d 119, 123 ("The other children, within 50 feet of plaintiff and between him and defendant, increase defendant's burden of lookout, but the presence of others does not relieve him of this duty. We cannot so hold as a matter of law. On the other hand the jury might well find defendant's driving constituted due care under the circumstances."). So here, at most the reasonable lookout issue was for the fact finder, which has spoken. Plaintiffs simply face the principle

which confronts losing parties having the burden of proof: "Seldom does a party who has the burden of proof on an issue sustain his burden as a matter of law." *Davis v. Gatewood*, 228 N.W.2d 84, 85 (Iowa).

We thus uphold the judgment.

AFFIRMED.