RUSSELL NOLAND, by his next Friend, Appellant, v.
ARTHUR KYAR, Appellee.

No. 45267.

JUNE 18, 1940.

REHEARING DENIED SEPTEMBER 27, 1940.

Ralph N. Lynch, for appellant.

Bradshaw, Fowler, Proctor & Fairgrave, for appellee.

BLISS, J.—Plaintiff was born on May 25, 1927. The injury complained of occurred on Frederick Hubbell Boulevard in Des Moines, at about 4:15 o'clock in the afternoon of December 2, 1938. This highway extends in a northeasterly and southwesterly direction. It has a paved surface, approximately 18 feet wide between the curbs, with earth shoulders, about 6 feet wide on each side. The plaintiff and his 9-year-old brother were returning home from the school which they attended on the easterly side of this highway. They had been walking northward on a sidewalk along the easterly side of the street, when their boyish curiosity took them across the pavement to its west side to look at a dead cat. They then proceeded northward for a distance on the west shoulder. The boulevard is intersected by Guthrie street and 3,003 feet further south, by Easton Boulevard. There are no intervening intersections and no buildings between the two intersections. There was motor traffic passing both ways as the boys walked along the west shoulder, and they stopped to wait for a break in the traffic to permit them to cross the pavement to the east side. There was quite a line of cars coming from the south. The plaintiff was in Grade 5-A in school and had fair marks in his school work. He had been a member of the school patrol.

The defendant is a married man, a few years past forty, engaged in electrical work, with four children. He was alone in his two-door Ford touring car, and was traveling southwest close to the west curb. The surface of the ground is level for some distance north and south of Guthrie street and there was nothing intervening to obstruct the vision of either party. The collision occurred about 219 feet south of Guthrie street. Defendant first saw the boys when he was about 435 feet away. He testified that they were then playing and scuffling along the west shoulder. There was evidence that he was traveling from 30 to 40 miles an hour when he first saw the boys, and while

he did not look at his speedometer, he thought he had slowed the speed of the car to 20 or 25 miles when the collision occurred. He testified:

"I gradually slowed up and was not going very fast. I wondered if those boys were going to stay over where they belonged. They looked plenty far enough away from the curb. Just as I was right close to them, one of them pushed right out in front of me, just so quick I don't know how it all happened. Of course, I hit him, I could not stop, he was too close to me. In my judgment the right front part of my car struck Russell as the right front headlight lens was broken. I stopped my car after the accident and got out and went around and picked up the boy. He was lying underneath the rear bumper between the rear wheels. I took him to the Lutheran Hospital."

His car was traveling about a foot or 18 inches from the west curb, and the boy was barely on the pavement when he struck him. Another motorist going northeast and close to the place of collision testified that:

"The plaintiff seemed to tag the other boy. He just kind of hit him and then run. He ran out at about a 45 degree angle from where he was standing in front of the car, with his back partly to the car. He didn't anymore than get there until the car hit him. * * * Kyar was going somewhere near 20-25 miles an hour."

Another motorist at the spot testified:

"I saw the boys on the west side of Hubbell Boulevard before the accident. They were playing, tagging each other on the west side of the street. The car was coming slow. He ran right out in front of the car just about the time the car got right even with him. He just threw himself right out in front of it. The car stopped. I stopped. The little boy was lying right back of the left hind wheel after the accident."

The plaintiff's version and that of his brother varied little

from the foregoing. Neither saw defendant's car. Plaintiff took a step or two facing southeast with his back rather toward the defendant and was struck. They denied they were playing tag. We have set out substantially all of the testimony as to how the collision took place. Defendant's motion for a directed verdict was overruled, as was plaintiff's motion for new trial.

The court, among others, gave the following instructions:

"Instruction V. 'You are instructed that the mere fact that an accident happened and that plaintiff sustained injuries and damages is not in itself sufficient to show that the defendant was negligent. Neither does the law presume negligence on the part of the defendant from the mere happening of an accident. The burden is upon the plaintiff to establish that the defendant was guilty of negligence in one or more of the particulars charged in the plaintiff's petition and set out in the foregoing statement of issues, and unless the plaintiff has established such negligence on the part of said defendant by a preponderance of the evidence your verdict will be for the defendant.'

"Instruction VIII. 'It is the law of this State that every driver of a motor vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding a horn when necessary. You are instructed that if you find from a preponderance of the evidence that an ordinarily careful and prudent person in the exercise of ordinary care would have sounded a warning with a horn when approaching the point on the roadway where he had seen the plaintiff and his brother, and you further find that the defendant failed to exercise such ordinary care, and failed to give such warning by the sounding of his horn, then in that event the defendant would be guilty of negligence.'

"Instruction IX. 'The evidence in this case shows without dispute that Russell Noland was between 11 and 12 years of age at the time of the accident, and that the defendant, when several hundred feet away, saw said Russell Noland and his

younger brother near the edge of the pavement a short distance from the pathway of defendant's approaching car.

" 'The defendant had no right to assume that Russell Noland or his brother would remain in a place of safety. It was his duty to anticipate that the children were likely to be heedless and capricious and might dart here and there from a place of safety into a place of danger. The defendant should, therefore, have continued to keep a lookout for these children and to be on the alert to avoid injury to them. He should have reduced his speed and been in a position, in the exercise of ordinary care, to stop promptly, or turn his course, if necessary, to avoid striking them or either of them, if they should run into the path of his car. The degree of care which the defendant was required to exercise in this situation was commensurate with the obvious danger, and one of the obvious dangers was the disposition of children suddenly to run out in response to impulse and without the exercise of judgment or caution. Motorists must take into account the disposition of children, and take the precaution which the situation requires. If the defendant, after discovering said children, failed to reduce the speed of his car so as to have it under such control as to be able, in the exercise of ordinary care, to stop promptly or turn his course, if necessary, if they should run into his pathway, he would be guilty of negligence.' * * *

"Instruction XI. 'You are instructed that it is the law that when one is placed in a position where he is required to act upon the impulse of the moment to avoid injury to another, or where a driver of an automobile is confronted by a sudden emergency not of his own making without sufficient time to determine with certainty the best course to pursue, he is not held to the same accuracy of judgment as would be required of him if he had time for deliberation. Accordingly, if the driver of an automobile exercises such care as an ordinarily prudent man would exercise when confronted by a like emergency he is not liable for an injury which has resulted from his conduct, even though another course of conduct would have

been more judicious or safer, as under such circumstances the injury is regarded as an inevitable accident.''

Appellant assigns error upon the giving of instructions Nos. V, VIII, and XI.

I. He concedes that in instruction No. IX the court correctly advised the jury as to the duties of the driver of a motor vehicle when approaching children who are off the highway but in close proximity thereto, in accordance with the principles first stressed in the dissenting opinion in Kessler v. Robbins, 215 Iowa 327, 334, 245 N. W. 284, 287, and announced in Webster v. Luckow, 219 Iowa 1048, 258 N. W. 685, and Darr v. Porte, 220 Iowa 751, 263 N. W. 240. But he contends that the effect of this instruction was nullified by the giving of instruction No. XI even though it was abstractly correct. In view of the fact that the plaintiff was struck almost the instant he placed himself in the path of the automobile, and that anything the defendant did or failed to do after the collision, had no connection with the injury, the giving of the instruction may well have been omitted. But in view of the instructions as a whole and particularly instruction No. IX which so fully and fairly stated the duties of the defendant, we believe that, if there was any error in the giving of instruction No. XI, it was fully cured. As the court has so often said, the instructions must be considered as a whole in determining whether any part thereof is erroneous or prejudicially erroneous. Instructions must be read as a whole, and, if some part should not have been given, the error is cured if other instructions fully, fairly, and properly advise the jury as to the legal principle involved. Engvall v. Des Moines City Ry., 145 Iowa 560, 566, 567, 121 N. W. 12, 14; Gipe v. Lynch, 155 Iowa 627, 630, 136 N. W. 714, 716; McSpadden v. Axmear, 191 Iowa 547, 553, 181 N. W. 4, 7.

II. Appellant also concedes that instruction No. V is correct as an abstract proposition of law, but claims that it is erroneous in that it stresses the point that the collision was unavoidable. In our judgment there is no error in this assignment.

III. With respect to the sounding of the automobile horn, the abstract shows that the defendant testified both that, he did not believe he blew his horn, and that, he did not blow his horn. Under this state of the record there was no error in permitting the jury to pass upon this issue, as the court did in instruction No. VIII. There was no other testimony on this matter. We cannot assume that the jury did not hear this testimony, and they were as well qualified to pass upon the question as the court.

The issues seem to have been fully and fairly presented to the jury and it is our judgment that there is no reversible error, and the judgment is affirmed.—Affirmed.

HAMILTON, C. J., and RICHARDS, SAGER, OLIVER, MILLER, MITCHELL, STIGER, and HALE, JJ., concur.