Lenore E. **MOSER,** Appellant,

v.

James O. **STALLINGS,** M.D., and Plastic Surgery Institute, P.C., Appellees.

No. 85–847.

Supreme Court of Iowa.

May 21, 1986.

As Amended July 15, 1986.

David S. Wiggins of Williams, LaMarca, Marcucci, Wiggins & Anderson, P.C., West Des Moines, for appellant.

Thomas A. Finley and Lorraine J. May of Duncan, Jones, Riley & Finley, Des Moines, for appellees.

Considered by UHLENHOPP, P.J., and McGIVERIN, LARSON, SCHULTZ and CARTER, JJ.

SCHULTZ, Justice.

In this case the patient initiated a tort action against her plastic surgeon and his professional corporation seeking damages for alleged wrongs committed in elective cosmetic surgery. Originally, plaintiff commenced this action asserting multiple theories of recovery; however, at the close of evidence she narrowed her claims to battery and negligence grounded on lack of informed consent. Following defendant's motion for a directed verdict, the trial court withdrew the count alleging battery and submitted the issue of negligence to the jury. The jury returned a verdict for the defendant; plaintiff appealed, and we affirm.

Plaintiff Lenore E. Moser and her husband operate a pizza shop in Mesa, Arizona. At the time of the surgery she was 52 years old. Defendant James Stallings is a medical doctor specializing in plastic and cosmetic surgery. He is an employee and shareholder in Plastic Surgery Institute, P.C., which has its office in West Des Moines, Iowa.

In 1969 another doctor performed an operation on plaintiff in which part of a bone from her nose was removed. Thereafter, she had four additional operations to repair the nose canal and one for cosmetic surgery on her eyelids, but plaintiff was not satisfied with the condition and appearance of her nose. Plaintiff became aware of defendant's reputation for cosmetic surgery by his appearance on a national television show. She telephoned defendant's office and obtained an appointment for July 30, 1979. After defendant examined plaintiff he suggested she forego corrective surgery on her nose and as a substitute, for the same fee, have a facial and eyelid plasty, forehead plasty, chin implant and dermabrasion of the upper lip. Plaintiff consented to the operation and surgery was performed on August 2, 1979. While performing the surgery defendant elected not to perform the chin implant.

Plaintiff was displeased with the results of her cosmetic surgery and brought this action. She alleges that as a result of the surgery her appearance has been worsened due to large and disfiguring scars, a substantially displaced hairline, and an unsatisfactory rearrangement of her face, scalp and neck areas. Defendant disputes these allegations and maintains that prior to her initiating this action plaintiff expressed no dissatisfaction with his services and only complained that she was overcharged due to the deletion of the chin implant.

On appeal, plaintiff contends the trial court erred by directing a verdict against her on the medical battery theory and in refusing to permit her to reopen her case for rebuttal evidence relating to this theory. She also challenges two instructions relating to the informed consent theory. Prior to addressing the specific issues, we examine the principles of medical battery and informed consent and the distinction between these closely related tort concepts.

A medical battery claim is appropriate only in circumstances when a doctor performs an operation to which the patient has not consented. *Cowman v. Hornaday,* 329 N.W.2d 422, 424 (Iowa 1983); *Perin v. Hayne,* 210 N.W.2d 609, 618 (Iowa 1973). The requisite elements of battery are met by showing the wrongdoer intended to inflict a harmful or offensive contact upon

the body of the plaintiff. F. Harper & F. James, *The Law of Torts* § 3.3, at 216 (1956). A battery occurs when the patient consents to one type of treatment and the doctor intentionally deviates from the consent and performs a substantially different treatment. *Perin,* 210 N.W.2d at 617–18.

 A malpractice action for negligence grounded on the doctrine of informed consent is premised on the patient's actual consent to therapy without sufficient disclosure of the risks or alternates to the treatment. *See Grosjean v. Spencer,* 258 Iowa 685, 693–94, 140 N.W.2d 139, 144–45 (1966). The doctrine is based on the patient's right to exercise control over his or her own body while undergoing elective treatment by making an informed choice whether to submit to the particular therapy. *Cowman,* 329 N.W.2d at 424–25. The doctor has the duty to disclose to the patient "information relating to the nature of the ailment, the nature of the proposed treatment, the probability of success of the contemplated therapy and its alternatives, and the risk of unfortunate consequences associated with such treatment." *Id.* at 425. We have adopted the rule that places the responsibility upon the doctor to reasonably disclose information material to the patient's decision. *Id.*

I. *Battery.* Plaintiff asserts that her battery claim is premised on the deviation by defendant from plaintiff's consent to surgery. She concedes that she signed a consent form, but points out that part of the treatment was for a chin implant which was not performed. She notes that defendant testified he purposely did not do a chin implant but instead rearranged her chin muscles in "what is called in plastic surgery circles canal platysma plasty." Defendant further testified he elected not to perform the chin implant because he thought "we got a great result achieved with her own tissue without having to do the chin implant."

 We believe the evidence clearly shows there was no deviation by the defendant from plaintiff's consent to surgery. There is no material evidence that defend-ant performed a substantially different treatment. Rather, the evidence shows defendant believed that by performing the extensive face lift, including his work under plaintiff's chin, the need for the implant was obviated. The face lift was clearly authorized. Plaintiff's signed consent form authorized the defendant "to perform such surgical procedures as Dr. Stallings deems necessary for the purpose of attempting to improve my appearance with respect to the following conditions: ... facial ... chin deformity." In her testimony plaintiff admitted that she considered the surgery under her chin to be part of the face lift. Defendant's failure to provide the chin implant may serve as a legitimate complaint in challenging the amount of the fee or in a contract action. The omission does not, however, constitute battery. The trial court correctly removed the issue of battery from jury consideration.

II. *Motion to reopen.* At the close of the defendant's evidence, defendant renewed his motion for a directed verdict and then rested. The court asked if there was rebuttal from the plaintiff. Plaintiff's counsel stated that he did not think that he was going to offer any more evidence but wanted a couple of minutes to review a few notes. Plaintiff later rested out of the presence of the jury and then again in the presence of the jury. The court then recessed the trial until one o'clock the following day. When the parties met the next day to take exceptions to the jury instructions, plaintiff's counsel attempted to reopen the case because he had neglected to put into the record certain matters contained in defendant's pretrial deposition. Earlier at trial, defendant had offered testimony by another medical expert that the face lift included the revision of the neck and chin. By requesting a reopening, plaintiff sought to contradict defendant's medical expert by reading exerpts from defendant's deposition in which defendant indicated that the extensive work he performed on plaintiff's neck and chin was not a routine part of the face lift. The trial court refused plaintiff's request.

The court has authority to allow any party to reopen and offer further testimony to correct an evident oversight or mistake at any time before final submission. Iowa R.Civ.P. 192. The trial court enjoys wide discretion in reopening a case for the reception of additional evidence. *Anderson v. City of Council Bluffs*, 195 N.W.2d 373, 378 (Iowa 1972).

■ We do not believe the trial court abused its discretion by refusing to grant plaintiff's request to reopen her case. Plaintiff's counsel was given the opportunity to review his evidence before he rested. The expert witness whose testimony plaintiff sought to rebut had left after the close of his testimony and returned to Florida. If surrebuttal was allowed, it would have merely been for the witness to clarify his testimony and would have substantially extended the trial. Furthermore, the nature and extent of the surgery was discussed at length by the defendant while being examined by plaintiff and the portions of defendant's deposition that plaintiff was trying to offer into evidence were cumulative. Under these circumstances we do not believe the trial court abused its discretion in refusing to grant plaintiff's motion to reopen.

III. *Instructions.* The trial court submitted to the jury plaintiff's claim that defendant negligently failed to obtain an informed consent from plaintiff prior to performing surgery. The jury instructions placed the burden on the plaintiff to prove that a lack of informed consent caused her damages and that she would not have submitted to the operation if defendant had advised her of the risks that she alleges were not disclosed. In separate instructions the court defined informed consent and specified those instances when informed consent is not required. Plaintiff does not claim error in these instructions. She does maintain the court erred in giving instruction 18, which defines materiality, and instruction 20, which addresses whether a physician impliedly warrants or guarantees a cure. We shall discuss plaintiff's claims in order.

A. *Instruction 18.* In defining "informed consent" in instruction 17 the trial court noted "a physician has a duty to disclose to the patient all known material risks peculiar to the proposed procedure." Instruction 17 continues that if the jury finds the physician failed to disclose certain information, the jury is charged to determine "whether the information was material as defined in Instruction No. 18." The first sentence in instruction 18 defines materiality. The plaintiff's objection to instruction 18 is confined to the second sentence which states: "In determining the disclosure to be made, the physician may consider the patient's age, intelligence and prior medical history and experience."

Plaintiff's present contentions concerning instruction 18 are unlike those made to the trial court. We note that appellate counsel did not serve as trial counsel. At the time of trial plaintiff objected to the second sentence in instruction 18 "for the reason that the statement is erroneous, and the instruction fails to take into consideration in any place a description of circumstances with relationship to the patient indicating the patient's need to be informed." As we understand the trial objection, plaintiff claimed two things. First, the statement is erroneous; however, no reason is given why it is erroneous. Second, the instruction should describe the circumstances indicating when the patient needs to be informed, but plaintiff makes no suggestions detailing or describing these circumstances. On appeal, plaintiff asserts the second sentence in instruction 18 is only applicable in instances when one consents to a battery or an intentional tort, rather than a situation when an informed consent is required prior to surgery. Plaintiff claims the trial court inappropriately shifted the emphasis from the patient's right to know all material risks in elective surgery to the patient's prior experience with other surgeons.

■ We believe two principles of law concerning appellate review of objections to jury instructions are applicable and control this issue. First, objections to instructions must specify the matter objected to

and on what grounds. Iowa R.Civ.P. 196. The objection must be sufficiently specific to alert the trial court to the basis of the complaint so that if error does exist the court may correct it before placing the case in the hands of the jury. *Lockard v. Carson,* 287 N.W.2d 871, 873 (Iowa 1980); *Miller v. International Harvester Co.,* 246 N.W.2d 298, 301 (Iowa 1976). Second, the only grounds or objections that may be asserted or considered on appeal are those specified in the objections to the trial court. Iowa R.Civ.P. 196. If the defendant makes an objection to an instruction at the trial court, he is bound by that objection on appeal. *State v. LeCompte,* 327 N.W.2d 221, 223 (Iowa 1982). Consequently, a defendant cannot amplify or change the objection on appeal. *Id.*

Plaintiff's objection at trial that the second sentence was erroneous, without stating the reason why it was erroneous, was not sufficiently specific to alert the trial court to a deficiency. Plaintiff's instant claim that the second sentence is inapplicable in this case, even if correct or partially correct, may not be considered because it is raised for the first time on appeal.

B. *Instruction 20.* In inserting instruction 20, the court was responding to defendant's request that the jury be charged that a physician does not impliedly warrant a cure or guarantee the best possible result and that there was no evidence that defendant guaranteed the surgery would be successful. Plaintiff objected on the basis that the instruction 20 was inapplicable "in a case involving a cause of action of negligence for lack of informed consent; and there is no claim that the physician has impliedly warranted a cure or guaranteed the best possible result." In response to the plaintiff's objection, the court added a caveat to instruction 20 stating in the last sentence, "However, this is not a defense to a failure to obtain an informed consent."

Plaintiff does not contend, nor do we decide, that instruction 20 contains an incorrect statement of law. She urges, however, that the instruction is inapplicable to a claim based on informed consent. De-

fendant, on the other hand, urges the instruction was appropriate because for three days "the jury was bombarded with testimony of complications experienced or perceived by" the plaintiff. Defendant claims he was entitled to an instruction that the surgery results were not guaranteed because the jury could have easily become confused about the nature of the negligence alleged.

■ We agree with plaintiff that the language in instruction 20 stating "a physician does not impliedly warrant a cure or guarantee the best result" is inapplicable to the present case. This language may well apply in a case properly grounded on claims of warranty or specific acts of malpractice in the treatment and diagnosis of the patient; however, counts containing these allegations were withdrawn. *See Sinkey v. Surgical Associates,* 186 N.W.2d 658, 660 (Iowa 1971). An action based on the doctrine of informed consent is entirely distinguishable. This doctrine bears a close relationship with the tort of battery. The dominant wrong springs from a deprivation of the patient's right to exercise control over his or her own body by making an informed choice before submitting to a particular treatment. *Cowman,* 329 N.W.2d at 424–25. The doctor is under a duty to disclose possible unfortunate results. *Id.* at 425. Due care in carrying out this subsequent treatment is not a defense. Consequently, we agree that instruction 20 should not have been given.

At trial and on appeal defendant contends instruction 20 was needed to offset evidence that defendant guaranteed his results in an appearance on national television and that plaintiff testified she was not told she might not obtain the best possible result. The fact that the jury had been bombarded with evidence which may have been more relevant to counts that were removed from jury consideration does not justify the instruction. If there was evidence in the record that was only relevant to the discarded claims, the proper solution would have been to request an instruction informing the jury to disregard

such evidence because the issues had been removed from their consideration.

Fundamental rules guide us when we determine whether giving a faulty instruction is reversible error. Instructions must be considered as a whole, and, if some part should not have been given, the error is cured if the other instructions properly advise the jury as to the legal principles involved. *Noland v. Kyar*, 228 Iowa 1006, 1011, 292 N.W. 810, 813 (1940). We recognize that giving instructions which are conflicting and confusing is reversible error. *Sammons v. Smith*, 353 N.W.2d 380, 385 (Iowa 1984) (citing *Hartwig v. Olson*, 261 Iowa 1265, 1278, 158 N.W.2d 81, 88 (1968)). An instruction is not confusing if a full and fair reading of all of the instructions leads to the inevitable conclusion that the jury could not have misapprehended the issue presented by the challenged instruction. *Mora v. Savereid*, 222 N.W.2d 417, 422 (Iowa 1974). Thus, we consider the instructions as a whole and if the jury has not been misled there is no reversible error. *In re Behrend's Will*, 233 Iowa 812, 818, 10 N.W.2d 651, 655 (1943).

While we do not approve of instruction 20, we believe the language contained therein does not mandate a reversal. The jury was instructed carefully and in detail without objection on the sole theory of recovery, that of lack of informed consent. Instruction 20 charged the jury that "a physician does not impliedly warrant a cure or guarantee the best result" was not a defense to the failure to obtain an informed consent. This is not a case like *Sammons* where two conflicting instructions were given in which one instruction allowed consideration of a theory of liability and another instruction on an unrelated defense conflicted with the other instruction. 353 N.W.2d at 384–85. We also believe the present case is distinguishable from the recent case of *Jensen v. Crabb*, 380 N.W.2d 736 (Iowa App.1985). The *Jensen* court determined that it was reversible error for the court to instruct that a doctor cannot be found negligent merely because

he makes a mistake in diagnosis when faulty diagnosis was not relied upon as a ground of negligence. 380 N.W.2d at 738. In the present case the jury was not instructed that the faulty language was a defense to negligence. Additionally, we note that the matter of prejudice was not discussed in *Jensen*.

When we read the instructions in the present case as a whole, we conclude the instructions were not misleading or confusing nor could the jury have misapprehended the issues presented under the doctrine of informed consent. Although the instructions are not perfect, they did not deprive the plaintiff of a fair trial. As we find no prejudice by the faulty language, there is no reversible error.

AFFIRMED.