# IN THE SUPREME COURT OF IOWA

No. 20–0914

Submitted December 15, 2022—Filed February 24, 2023

**STATE OF IOWA,**

Appellee,

vs.

**ALEXANDER SHANTEE THOMAS ROSS,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Madison County, Martha L. Mertz, Judge.

The State seeks further review of the court of appeals decision reversing the defendant's convictions for sexual abuse in the second degree based on erroneous noncorroboration jury instructions. **DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT VACATED AND CASE REMANDED.**

Oxley, J., delivered the opinion of the court, in which McDonald, McDermott, and May, JJ., joined. Mansfield, J., filed a dissenting opinion, in which Christensen, C.J., and Waterman, J., joined.

John C. Heinicke of Kragnes & Associates, P.C., Des Moines, for appellant.

Brenna Bird, Attorney General, and Thomas J. Ogden, Assistant Attorney General, for appellee.

**OXLEY, Justice.**

In *State v. Kraai*, 969 N.W.2d 487, 490–92 (Iowa 2022), and *State v. Mathis*, 971 N.W.2d 514, 516, 520 (Iowa 2022), we held that it is error in sexual abuse cases for a trial court to instruct jurors that "[t]here is no requirement that the [alleged victim's testimony] be corroborated." Although a correct statement of law, such an instruction, without more, unduly emphasizes the alleged victim's testimony. *Kraai*, 969 N.W.2d at 491–95. The district court in this case used a variation of the noncorroboration instruction that had been percolating through our court of appeals on a parallel course to the *Kraai* instruction:

> You should evaluate the testimony of [the alleged victim] the same way you evaluate the testimony of any other witness. The law does not require that the testimony of [the alleged victims] be corroborated in order to prove that [they were] sexually abused. You may find the Defendant guilty of Sexual Abuse if [the alleged victim's] testimony convinces you of guilt beyond a reasonable doubt.

We must now decide whether the additions to the instruction cure the errors we found in the instruction at issue in *Kraai* and *Mathis*. On our careful review of the instructions provided in this case, we conclude they do not.

## I. Factual and Procedural History.

Alexander Ross and Tykeshia McCuen began dating in 2011. Eventually, the two moved in together in Patterson, Iowa. Tykeshia and Ross have two children together. Tykeshia also has two daughters from a previous relationship—L.C. and K.C.—who were babies when Ross moved in with

Tykeshia. From the time Ross and Tykeshia began dating until Tykeshia left in April 2019, Ross acted as the girls' stepfather.

The couple had a tumultuous and physically abusive relationship. On April 11, they got into a heated argument, which left Tykeshia afraid for her safety. So, in the middle of the night, she left Ross and took the children to Westminster, Colorado to stay with her mother, Jackie. According to Tykeshia, it was at this point that L.C. and K.C. first accused Ross of having sexually abused them. Jackie and Tykeshia reported the allegations to Deputy Don Kinney of the Madison County, Iowa Sheriff's Office, who began an investigation.

Ross was charged with two counts of second-degree sexual abuse. *See* Iowa Code § 709.3(1)(*b*) (2019). At trial in March 2020, the State's primary evidence against Ross was the testimony of L.C. and K.C.; no physical evidence was presented to corroborate the charges. Each testified that Ross put his private part in her private parts (both front and back) on multiple occasions when Tykeshia was working night shifts as a nurse. Each testified she told her mother, who did nothing. Each also testified to screaming, but Ross put his hand over her mouth. In addition, L.C., who was in fourth grade, testified that Ross said inappropriate things and described "white stuff" that came out of Ross's penis as "gooey" and "disgusting." K.C., who was in second grade and is diabetic, testified that Ross gave her suckers afterward. Neither girl testified about Ross's abuse of the other. The defense's only witnesses were: Tykeshia, who testified that the girls never made her aware of any sexual abuse prior to the April 2019

trip to Colorado and that she had never herself noticed signs of such abuse, and a friend of Ross's, who testified Ross was a good stepparent to L.C. and K.C.

At the close of trial and over Ross's objection,[1] the court gave jurors Instructions 16 and 17, which were identical other than identifying each girl separately:

> You should evaluate the testimony of [L.C. or K.C.] the same way you evaluate the testimony of any other witness. The law does not require that the testimony of [L.C. or K.C.] be corroborated in order to prove that she was sexually abused. You may find the Defendant guilty of Sexual Abuse if [L.C.'s or K.C.'s] testimony convinces you of guilt beyond a reasonable doubt.

The jury deliberated for a little over ninety minutes and returned a guilty verdict on both counts.

Ross was sentenced to two indeterminate, consecutive twenty-five-year sentences (with a combined mandatory minimum sentence of thirty-five years), along with a lifetime special sentence under Iowa Code § 903B.1. Ross appealed, alleging three points of error: (1) insufficient evidence supported the verdict; (2) the district court considered an improper sentencing factor; and (3) the noncorroboration instructions were improper.

We transferred the case to the court of appeals. The court rejected Ross's sufficiency challenge but agreed, over a dissent, that the noncorroboration instructions were improper based on our recent decisions in *Kraai* and *Mathis*. In her dissent, Judge Greer noted that the noncorroboration instructions used

---

[1]Ross's counsel initially asked the court to remove the third sentence of the proposed instructions as "lead[ing] the jury to put more emphasis on one witness's testimony than it does on the other witness's testimony." He then objected to giving the instructions at all but asked that the last sentence be removed if they were included.

here were virtually identical to the noncorroboration instruction approved by an earlier court of appeals panel in *State v. Altmayer*, No. 18–0314, 2019 WL 476488 (Iowa Ct. App. Feb. 6, 2019). In *Kraai*, we cited *Altmayer* in a manner that left Judge Greer uncertain whether the noncorroboration instruction at issue in *Altmayer* would stand up to post-*Kraai* scrutiny.[2]

We granted the State's application for further review to decide that issue. We elect to let the court of appeals' opinion stand on the sufficiency of the evidence challenge. *See Farnsworth v. State*, 982 N.W.2d 128, 135 (Iowa 2022) ("When we grant further review, we may exercise our discretion to let the court of appeals decision stand as the final decision on particular issues." (quoting *State v. Fogg*, 936 N.W.2d 664, 667 n.1 (Iowa 2019))). Because we affirm the court of appeals' remand for a new trial, we also decline to consider Ross's sentencing challenge.

## II. Noncorroboration Jury Instructions.

We review challenges to jury instructions for correction of errors at law. *State v. Rohm*, 609 N.W.2d 504, 509 (Iowa 2000) (en banc). Jury instructions are considered "as a whole to determine their accuracy" and are "judged in context[,]

---

[2]We referenced *Altmayer* as follows:

An instruction that stated no witness's testimony needs to be corroborated (with some exceptions not applicable here) would correctly state the law and help dispel any misconceptions regarding uncorroborated witness testimony. *Cf. State v. Altmayer*, No. 18–0314, 2019 WL 476488, at *5 (Iowa Ct. App. Feb. 6, 2019) (approving noncorroboration instruction that provided the jury "should evaluate the testimony of [the alleged victim] the same way [it] evaluate[d] the testimony of any other witness").

*Kraai*, 969 N.W.2d at 495.

. . . not in isolation," meaning improper instructions "can be cured 'if the other instructions properly advise the jury as to the legal principles involved.' " *Kraai*, 969 N.W.2d at 490 (first quoting *State v. Donahue*, 957 N.W.2d 1, 10 (Iowa 2021); then quoting *State v. Liggins*, 557 N.W.2d 263, 267 (Iowa 1996); and then quoting *Thavenet v. Davis*, 589 N.W.2d 233, 237 (Iowa 1999) (en banc)). Where an instruction is incorrect as a matter of law and not cured by other instructions, we presume prejudice "unless the record affirmatively establishes there was no[ne]." *Donahue*, 957 N.W.2d at 6 (quoting *State v. Hanes*, 790 N.W.2d 545, 551 (Iowa 2010)). In the absence of such record evidence, reversal is required. *Id.*

**A. Propriety of the Noncorroboration Instructions.** We repeat the challenged noncorroboration instructions as given by the district court:

> You should evaluate the testimony of [L.C. or K.C.] the same way you evaluate the testimony of any other witness. The law does not require that the testimony of [L.C. or K.C.] be corroborated in order to prove that she was sexually abused. You may find the Defendant guilty of Sexual Abuse if [L.C.'s or K.C.'s] testimony convinces you of guilt beyond a reasonable doubt.

The court of appeals has previously approved of this same instruction. *See Altmayer*, 2019 WL 476488, at *5. The court of appeals had also approved of a similar but truncated noncorroboration instruction that included only the second sentence, *State v. Barnhardt*, No. 17-0496, 2018 WL 2230938, at *4 (Iowa Ct. App. May 16, 2018) (approving noncorroboration instruction providing that "[t]he law does not require that the testimony of the alleged victim be corroborated" (alteration in original)), but we abrogated that decision in *Kraai*, *see* 969 N.W.2d at 496 ("[W]e hold the district court erred in instructing the jury

that '[t]here is no requirement that the testimony of a complainant of sexual offenses be corroborated.' " (second alteration in original)).

Our "long-standing precedents" provide "that instructions regarding witness credibility should apply equally to witnesses for the state and the defense and that instructions should not draw attention to specific evidence." *Kraai*, 969 N.W.2d at 495. In *Kraai* and *Mathis*, we held that the truncated noncorroboration instruction failed on both points—it drew undue attention to the victims' testimony and (or, indeed, because) it omitted discussion of the symmetrical principle that no witness's testimony needs corroboration to be believed.[3] *Id.* at 492–93; *see also Mathis*, 971 N.W.2d at 519–20. Thus, there were two problems with the *Kraai* instruction: (1) it emphasized the victim's testimony, which could lead jurors to conclude that the victim's testimony deserved special consideration; and (2) it provided an incomplete discussion of the noncorroboration principle, which could confuse jurors and mislead them into believing that although victims' testimony does not require corroboration, other witnesses' testimony does. The noncorroboration principle applies equally to all witnesses, and any instruction on the issue should include this symmetry to avoid misleading the jury into believing it applies only to certain witnesses. *See Kraai*, 969 N.W.2d at 493 ("The omission of a symmetrical noncorroboration

---

[3]There are some exceptions—not applicable here—where witness testimony requires corroboration; for example, under the Iowa Rules of Criminal Procedure, the testimony of an accomplice to a crime requires corroboration "tend[ing] to connect the defendant with the commission of the offense" in order to convict the defendant. Iowa R. Crim. P. 2.21(3). This case does not involve accomplices, so an instruction that "no witness's testimony needs corroboration" would have been an accurate statement of the law.

instruction may have permitted the jury to infer that Kraai's testimony required corroboration to be believed."); *see also State v. Dever*, 508 P.3d 158, 170 (Utah Ct. App. 2022) ("[B]y mentioning only the 'testimony of a witness to a crime,' the jurors could have believed that the testimony of other witnesses, particularly Dever, did require corroborating evidence to be believed.").

As compared to the *Kraai* instruction, the first sentence in this instruction helps dispel the first improper assumption: that alleged victims' testimony requires special consideration. *Cf.* Tyler J. Buller, *Fighting Rape Culture with Noncorroboration Instructions*, 53 Tulsa L. Rev. 1, 24 (2017) ("[N]oncorroboration instructions can be prefaced with language that tells the jury to evaluate the credibility of victims the same way they evaluate other evidence. Including that verbiage takes the wind out of the sails for this concern [of singling out victims' testimony]."). The first sentence addresses the way the victims' testimony is evaluated and naturally takes the jurors back to the general instructions that they should "[g]ive all the evidence the weight and value [they] think it is entitled to receive" and "may believe all, part, or none of any witness's testimony." Thus, the first sentence reinforced to the jurors the need to consider the victims' testimony in the same way they considered other witnesses' testimony.

But whether a witness's testimony needs corroboration to support a conviction is a different issue from how the testimony is evaluated against other evidence in the case. And importantly, no other instruction here addressed corroboration of any other witness's testimony, leaving in place the asymmetry problem we identified in *Kraai*. On this point, the second sentence of these

instructions is materially indistinguishable from the *Kraai* instruction in that it fails to explain the rest of the noncorroboration principle: that *no* witness's testimony requires corroboration to be believed. Therefore, as in *Kraai* and *Mathis*, there is a risk jurors could have inferred that other witnesses' testimony does require corroboration.

The State argues that the first sentence cures any deficiencies in the second sentence that are inconsistent with *Kraai* and *Mathis*. Of course, jury instructions need not be perfect. *See Moser v. Stallings*, 387 N.W.2d 599, 605 (Iowa 1986) ("Although the instructions are not perfect, they did not deprive the plaintiff of a fair trial."). Ultimately, we are looking for whether the "instructions are misleading and confusing" when read as a whole. *Rivera v. Woodward Res. Ctr.*, 865 N.W.2d 887, 902 (Iowa 2015). "[A]n instruction is misleading or confusing if it is 'very possible' the jury could reasonably have interpreted the instruction incorrectly." *Id.* (quoting *McElroy v. State*, 637 N.W.2d 488, 500 (Iowa 2001)). "On the other hand, if a review of the instructions 'leads to the *inevitable* conclusion that the jury *could not* have misapprehended the issue,' then the challenge is without merit." *Id.* (quoting *Moser*, 387 N.W.2d at 605).

We are not convinced that the first sentence's direction to evaluate the victims' testimony the same as other witnesses cures the express reference to corroboration of a victim's testimony in the second sentence. As written, the jury could read the second sentence to be an example of the principle contained in the first sentence, or it could be read as an exception to that principle. They could be read together as:

> You should evaluate the testimony of [L.C. or K.C.] the same way you evaluate the testimony of any other witness. [*In other words*,] [t]he law does not require that the testimony of [L.C. or K.C.] be corroborated . . . .

Or they could be read together as:

> You should evaluate the testimony of [L.C. or K.C.] the same way you evaluate the testimony of any other witness. [*However*, (or *But*,)] [t]he law does not require that the testimony of [L.C. or K.C.] be corroborated . . . .

These examples reflect that the first sentence does not provide the clarification the State suggests. Because we do not expect jurors to parse jury instructions the same way we parse statutes, we cannot be certain how they attempted to navigate the ambiguity. Either interpretation was plausible, but one was legally erroneous.

In any event, we must also consider the third sentence of Instructions 16 and 17, which was the primary concern Ross raised at trial. That sentence says: "You may find the Defendant guilty of Sexual Abuse if [L.C.'s or K.C.'s] testimony convinces you of guilt beyond a reasonable doubt." As Ross argued in his original objection to the district court, the third sentence highlights the girls' testimony over other evidence in the record. The overarching premise of our concern in *Kraai* was that "instructions that set apart, highlight, or accentuate the testimony of a particular witness or a particular piece of evidence are improper." 969 N.W.2d at 492. The third sentence of Instructions 16 and 17 runs afoul of that concern. *See, e.g.*, *Ludy v. State*, 784 N.E.2d 459, 460–62 (Ind. 2003) (holding that jury instruction "unfairly focuse[d] the jury's attention on and highlight[ed] a single witness's testimony" where it instructed the jury: "A

conviction may be based solely on the uncorroborated testimony of the alleged victim if such testimony establishes each element of any crime charged beyond a reasonable doubt."); *Veteto v. State*, 8 S.W.3d 805, 816 (Tex. Ct. App. 2000) (holding that jury instruction singled out the alleged victim's testimony and improperly commented on the weight of the evidence where it informed the jury: "The law provides the testimony of the victim alone, if believed by you beyond a reasonable doubt, need not be supported by other evidence before a finding of guilt can be returned. That is to say, the testimony of [A.L.], standing alone, if believed by you beyond a reasonable doubt, is sufficient proof to support a finding of guilt." (alteration in original)), *abrogated on other grounds by State v. Crook*, 248 S.W.3d 172, 176–77 (Tex. Crim. App. 2008).

Although the truncated noncorroboration instruction in *Kraai* did not include this reasonable doubt sentence, we did consider whether the general reasonable doubt instruction cured the taint from the asymmetrical noncorroboration instruction. *See* 969 N.W.2d at 496. Not only did we conclude it did not, we reasoned that, "[i]f anything," it accentuated the error, explaining: "While the jury was correctly instructed that the State bore the burden of proving Kraai guilty beyond a reasonable doubt, the jury was determining whether the State satisfied its burden in light of the noncorroboration instruction that uniquely accentuated N.F.'s testimony over all others." *Id.* Here, the third sentence of the instructions even more directly accentuated the alleged victims' testimony: "You may find the Defendant guilty of Sexual Abuse *if [L.C.'s or K.C.'s] testimony* convinces you of guilt beyond a reasonable doubt." (Emphasis added.)

Review of the other, general jury instructions does not alleviate the concern that Instructions 16 and 17 improperly focused the jury on the girls' testimony. Those instructions were the same here as they were in *Kraai* and *Mathis*, where we concluded they may have actually amplified, rather than cured, the error in the noncorroboration instruction. *Kraai*, 969 N.W.2d at 496 ("If anything, the instructional error necessarily was channeled into the general instructions. For example, instruction 10 told the jury they could believe 'all, part or none of any witness's testimony,' but, in determining which witnesses to believe, the jury evaluated [the victim's] testimony in light of the noncorroboration instruction that uniquely accentuated her testimony over all others.").

Likewise, the instructions here may have compounded any uncertainty and pushed jurors to make the improper inference. For example, Instruction 13, dealing with expert testimony, contained a clause similar to the first sentence in the noncorroboration instructions: "Consider expert testimony just like any other testimony." That instruction did *not*, however, follow up with a sentence explaining that expert witness testimony does not need to be corroborated to be believed. When comparing Instruction 13 to the noncorroboration instructions, a juror could reasonably conclude that since the instructions started from an equal premise (i.e., treat all witness testimony the same) but Instructions 16 and 17 contained an additional point of law (i.e., the law does not require corroboration for victims' testimony specifically), the additional point about noncorroboration was exclusive to L.C.'s and K.C.'s testimony. *See State v.*

*Davis*, 951 N.W.2d 8, 19 n.1 (Iowa 2020) ("When the marshaling instructions for the other nine offenses cross-referenced the insanity defense but not the instruction for first-degree murder, the jurors would reasonably conclude that omission was intentional and the defense was unavailable."). We cannot say the jurors would necessarily read the first two sentences of Instructions 16 and 17 to apply the corroboration principle to all witnesses. And more critically, read together with the third sentence, those instructions single out the girls' testimony, thereby improperly highlighting some evidence (their testimony) over all other evidence. We conclude that Instructions 16 and 17 were misleading or confusing to the jury. *See Rivera*, 865 N.W.2d at 902 (instructions are misleading or confusing if it is " 'very possible' the jury could reasonably have interpreted the instruction incorrectly" (quoting *McElroy*, 637 N.W.2d at 500)).

As in *Kraai*, we acknowledge the State's interest in sex-abuse cases in dispelling the misconception that alleged victims' testimony requires corroboration to support a conviction.[4] 969 N.W.2d at 495. But "those interests can be advanced by a *nonparticularized* instruction *applicable to all witness testimony*." *Id.* (emphases added); *see also Mathis*, 971 N.W.2d at 520 ("*In the absence of any other instruction regarding the uncorroborated testimony of other*

---

[4]We note, however, that the State's need to do so here is somewhat questionable. On appeal, the State gave examples of three jurors' responses to voir dire questions about the need for victim-witness corroboration to support its position that the noncorroboration instruction was necessary here. None of those three jurors were selected for the final jury panel. And the State candidly admits that "other panelists said they understood that they could rely on testimony as proof that abuse occurred." Presumably, then, the voir dire process worked as intended to remove jurors who harbored such attitudes and were unwilling to set them aside. But for the jurors that remained, the State's repeated emphasis through its voir dire questioning on whether corroboration is required may have only worked to sow more confusion than it settled.

*witnesses,* the instruction unduly and improperly emphasized the complainant witnesses' testimony." (emphasis added)). The instructions given here missed that mark; they were still particularized to the victims' testimony, and there was still no other instruction telling jurors the noncorroboration principle applies to all witnesses. We meant what we said in *Kraai*: "[a]n instruction that state[s] no witness's testimony needs to be corroborated" would adequately balance the competing interests. *Kraai,* 969 N.W.2d at 495.[5] Without endorsing it as an exclusive method of doing so, we suggest courts simply use that language when the State requests a noncorroboration instruction: "No witness's testimony needs to be corroborated to be believed." Such an instruction "correctly state[s] the law and help[s] dispel any misconceptions regarding uncorroborated witness testimony" without unduly emphasizing any witness's testimony over another's. *Id.*

**B. Prejudice.** Having determined the district court erred by giving an improper noncorroboration instruction that inappropriately highlighted the

---

[5]On this point, we recognize *Kraai*'s "cf." citation to *Altmayer* caused some confusion as to whether we intended to approve of the entire instruction used there. As the majority opinion in the court of appeals here correctly concluded, we did not intend to tacitly approve of the entire instructions used in *Altmayer* through a "cf." citation. That citation is best understood as building on *Kraai*'s earlier discussion of nonparticularized noncorroboration instructions generally, where we cited *State v. Ludwig*, 305 N.W.2d 511 (Iowa 1981), as an example of a case where a court used an instruction that "by its terms [applied] to all witnesses who testif[ied] at trial" and therefore "did not carry with it the danger of distinguishing [the] defendant's testimony from that of other witnesses." *Kraai*, 969 N.W.2d at 493 (alterations in original) (quoting *Ludwig*, 305 N.W.2d at 512).

In contrast, the instructions used here and in *Altmayer* contain a sentence that, by its terms, applies to all witnesses—"evaluate the testimony of [an alleged victim] the same way [you] evaluate the testimony of any other witness," *Altmayer*, 2019 WL 476488, at *5—followed by a sentence that, by its terms, applies only to the victims' testimony. Approving the use of the first sentence generally does not mean that the second sentence—explicitly disapproved of in *Kraai* and *Mathis*—becomes proper by association.

alleged victims' testimony, we must address whether that error requires a new trial. *Kraai*, 969 N.W.2d at 496–97. We presume prejudice "unless the record affirmatively establishes there was no[ne]." *Donahue*, 957 N.W.2d at 6 (quoting *Hanes*, 790 N.W.2d at 551). "When [an instructional] error is not of constitutional magnitude, the test of prejudice is whether it sufficiently appears that the rights of the complaining party have been injuriously affected or that the party has suffered a miscarriage of justice." *State v. Plain*, 898 N.W.2d 801, 817 (Iowa 2017) (quoting *State v. Marin*, 788 N.W.2d 833, 836 (Iowa 2010), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699 (Iowa 2016)). Our prejudice inquiry "looks . . . to the basis on which 'the jury *actually rested* its verdict.' " *State v. Kennedy*, 846 N.W.2d 517, 527 (Iowa 2014) (omission in original) (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993)). "The inquiry 'is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error.' " *State v. Shorter*, 945 N.W.2d 1, 9 (Iowa 2020) (quoting *Kennedy*, 846 N.W.2d at 527). The presumption of prejudice may also be "overcome when the jury received 'strong evidence' of a defendant's guilt." *Kraai*, 969 N.W.2d at 497 (quoting *Plain*, 898 N.W.2d at 817).

In *Kraai*, this court found "strong evidence of Kraai's guilt" overcame any prejudice that the erroneous instruction may have caused. *Id.* at 497–99. The victim's testimony in that case was corroborated by several items of physical evidence, making "the challenged instruction, in essence, . . . a moot point." *Id.* at 499 (quoting *Garza v. State*, 231 P.3d 884, 891 (Wyo. 2010)).

In *Mathis*, on the other hand,

> neither [victim's] testimony [wa]s corroborated by other evidence. Both children testified to separate instances of sex abuse, but neither witnessed nor testified about the sex abuse allegedly committed against the other child. Both children eventually told their mother about the sexual abuse, but there [wa]s no evidence their mother independently corroborated the children's accounts of abuse. And there [wa]s no physical evidence of any sort corroborating the children's testimony.
>
> The noncorroboration instruction in th[at] case thus did not pertain to a moot point; instead, the noncorroboration instruction in th[at] case was a focal point.

971 N.W.2d at 521.

The facts of this case put it closer to *Mathis* than *Kraai*, meaning the presumption of prejudice was not overcome. All of the State's evidence of guilt derived—either directly or indirectly—from L.C.'s and K.C.'s allegations. No physical evidence was introduced; in fact, the State's only exhibits at trial were a photo of Ross (used for identification purposes) and the resumes of its two expert witnesses. The State's experts testified only as to issues regarding sex-abuse victims generally; neither was even familiar with L.C. or K.C. prior to trial. Other than discussing his interview with Ross, in which Ross generally denied the charges, Deputy Kinney's testimony only relayed what he learned about the allegations through conversations with Tykeshia, Jackie, and investigators in Colorado, all of whom acquired their knowledge of the allegations from L.C. and K.C. Although by all accounts Jackie was supportive of the girls' claims, she did not testify at trial. Finally, Tykeshia testified, in Ross's defense, that she had never noticed signs of abuse and that the girls never reported any abuse to her until their April 2019 trip to Colorado. Notably, the prosecutor

highlighted the noncorroboration instruction during closing argument, telling the jury:

> Now, Instruction No. 16. Can everybody read that? Everybody see that? "You should evaluate the testimony of [L.C.] the same way you evaluate the testimony of any other witness." The law does not require that the testimony of [L.C.] be corroborated in order to prove that she was sexually abused. It doesn't have to be DNA evidence. There doesn't have to be. "You may find the defendant guilty of sexual abuse if [L.C.'s] testimony -- if what she told you convinces you of guilt beyond a reasonable doubt."
>
> Instruction No. 17 is the exact same instruction except for [K.C.]. If you believe [K.C.'s] testimony, if it convinces you beyond a reasonable doubt, then you must find Alexander Ross guilty.

The asymmetrical noncorroboration instructions could have led jurors to believe Tykeshia's testimony needed to be corroborated while also improperly highlighting the importance of L.C.'s and K.C.'s testimony over Tykeshia's.

Accordingly, although "there is sufficient evidence to sustain [Ross's] convictions" over his sufficiency-of-the-evidence claim, here, where the noncorroboration instruction improperly tainted the jury's consideration of L.C.'s and K.C.'s testimony, and where that consideration was the "focal point" of the State's case, we cannot conclude that the record "affirmatively establish[es] the absence of prejudice." *Mathis*, 971 N.W.2d at 521.

**III. Conclusion.**

The State presented sufficient evidence to sustain Ross's convictions, but the district court erred by giving the jury asymmetrical, particularized noncorroboration instructions focusing on the victims' testimony. Ross's convictions are hereby vacated, and the case is remanded to the district court for further proceedings.

**DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT VACATED AND CASE REMANDED.**

McDonald, McDermott, and May, JJ., join this opinion. Mansfield, J., files a dissenting opinion, in which Christensen, C.J., and Waterman, J., join.

**MANSFIELD, Justice (dissenting).**

I respectfully dissent and would affirm the sexual abuse convictions of the defendant Alexander Ross. I question whether there was any error in the instructions; if there was, it was inconsequential and nonprejudicial. There is no reason to subject the child victims in this case to a second trial.

In *State v. Kraai*, 969 N.W.2d 487, 490, 492–94 (Iowa 2022), we disapproved of a different jury instruction that said, simply, "There is no requirement that the testimony of a complainant of sexual offenses be corroborated." We criticized that instruction because it "focused the jury on the testimony of a single witness, [i.e., the complaining witness]," and it "particularized [the complaining witness's] testimony as not requiring corroboration in the absence of a universal instruction regarding the noncorroboration of all other witness testimony." *Id.* at 493. In other words, the single-sentence instruction was "asymmetrical and particularized." *Id.*

We could have followed a different path in *Kraai*. We noted in *Kraai* that courts are divided and several jurisdictions have approved of this single-sentence instruction. *Id.* at 494–95. We also observed that the instruction "was a correct statement of the law." *Id.* at 491–92. Nonetheless, we held that the giving of this instruction was error, although in the end we did not disturb the jury verdict because we concluded that the error was nonprejudicial and harmless. *Id.* at 496, 499.

This case involves a far less objectionable instruction than the single-sentence instruction at issue in *Kraai.* And it's another case in which the evidence of the defendant's guilt was strong. *See id.* at 497. Accordingly, I would find that any minimal error here—if there was error—was nonprejudicial and harmless.

Instructions must be read as a whole. *Id.* at 490. In the present case, Instruction 16 said,

> You should evaluate the testimony of [L.C.] the same way you evaluate the testimony of any other witness. The law does not require that the testimony of [L.C.] be corroborated in order to prove that she was sexually abused. You may find the Defendant guilty of Sexual Abuse if [L.C.]'s testimony convinces you of guilt beyond a reasonable doubt.

Instruction 17 contained the same directive for K.C.

This form of instruction did not originate in this particular trial. It was proposed in a thoughtful 2017 law review article by a prosecutor who now serves on our court of appeals. *See* Tyler J. Buller, *Fighting Rape Culture with Noncorroboration Instructions*, 53 Tulsa L. Rev. 1, 27–29 (2017) [hereinafter Buller].

By way of further context, the preamble to all of the instructions stated that the State has "the burden of proving beyond a reasonable doubt each and every allegation of the Trial Information." Instruction 2 added, "If the State does not prove the Defendant guilty beyond a reasonable doubt, your verdict must be not guilty." Instruction 6 said, "In determining the facts, you may have to decide what testimony you believe. You may believe all, part, or none of any witness's testimony." Instruction 7 told the jury: "You must consider all of the instructions

together. No one instruction includes all of the applicable law." And Instruction 9 reiterated, "The burden is on the State to prove Alexander Shantee-Thomas Ross guilty beyond a reasonable doubt."

All things considered, I seriously doubt that Instructions 16 and 17 had any risk of misleading the jury. Unlike the instruction challenged in *Kraai*, which consisted of only a single sentence highlighting the testimony of the complaining witness as not needing corroboration, the instruction here had that sentence sandwiched between a statement that "[y]ou should evaluate the testimony of [the complaining witness] the same way you evaluate the testimony of any other witness" and a statement that "[y]ou may find the Defendant guilty of Sexual Abuse if [the complaining witness's] testimony convinces you of guilt beyond a reasonable doubt." In order to go astray, the jury would have had to disobey both of these additional sentences.

The majority says that the jury could have understood the second sentence as contradicting the first. Respectfully, that makes no sense. "We presume jurors follow instructions." *State v. Fontenot*, 958 N.W.2d 549, 562 (Iowa 2021). Also, we ourselves follow a rule that we try to avoid construing statutes, contracts, or whatever so they conflict with each other; shouldn't we credit a jury of twelve as having the same discernment? Not only was the first sentence of Instructions 16 and 17 clear and unambiguous, but the third sentence also steered the jury back to the critical point that the complaining witness's testimony—uncorroborated or not—needed to convince the jury beyond a reasonable doubt in order to justify a guilty verdict. *See* Buller, 53 Tulsa L. Rev. at 27–28 (explaining how the first

and third sentences of this form of instruction counter any criticism that could be leveled at the second sentence).

Notably, *Kraai* cited an unpublished court of appeals opinion that had approved of the same three-sentence instruction:

> An instruction that stated no witness's testimony needs to be corroborated (with some exceptions not applicable here) would correctly state the law and help dispel any misconceptions regarding uncorroborated witness testimony. *Cf. State v. Altmayer*, No. 18-0314, 2019 WL 476488, at *5 (Iowa Ct. App. Feb. 6, 2019) (approving noncorroboration instruction that provided the jury "should evaluate the testimony of [the alleged victim] the same way [it] evaluate[d] the testimony of any other witness").

969 N.W.2d at 495 (alterations in original). According to *The Bluebook*, the tea leaf "Cf." means, "The authority is different from the main proposition but sufficiently analogous to lend support." *The Bluebook: A Uniform System of Citation* B. 1.2(a), at 5 (Columbia L. Rev. Ass'n et al. eds., 21st ed. 2020). Thus, from our signal, one could conclude that we were blessing the same three-sentence instruction given in *Altmayer*; we certainly didn't suggest it amounted to reversible error.

Moreover, there is a key point disregarded by the majority: Ross didn't take the stand and deny the charges. So this wasn't a situation, as in *Kraai*, where "[t]he omission of a symmetrical noncorroboration instruction may have permitted the jury to infer that [the defendant]'s testimony required corroboration to be believed." 969 N.W.2d at 493. This wasn't a "she said, he said" case; it was a "they said" case, and the question was whether "they" should be believed beyond a reasonable doubt.

And the State's case was strong. To recap, at the time of trial, L.C. was ten years old; K.C. was nine. They described fairly recent events. To my reading, their testimony comes across as quite compelling. But don't take my word for it. Ask the trial judge. As she put it, "[T]hese two little girls . . . were about as credible as any child witness I've ever heard."

Here is an example from K.C.'s testimony:

Q. . . . Where did he touch you?

A. In my lower area.

Q. Okay. Do you know what the doctors and teachers call that lower area, what the word is for it?

A. Yes.

Q. What is it? What's that word?

Are you embarrassed to say it?

A. Yes.

Q. Why don't you just tell us anyway.

If I had you stand up, could you point to it?

A. No.

Q. Why not?

A. Because it makes me feel uncomfortable.

Q. Okay. Why does it make you feel uncomfortable?

A. Because -- I don't know.

Q. Well, what do you call that part?

A. The "V" word.

Q. And what is the "V" word? Can you spell it? Would it be easier to spell it?

A. I don't know how to spell it.

The defense took depositions of both girls before trial, yet we did not hear anything at trial about those depositions. What does that tell you? Presumably, the girls' deposition testimony was consistent with their trial testimony.

The defense called two witnesses. I do not believe they helped the defense. One was a longtime friend of Ross who testified basically that he observed Ross to be a good father. The other was the girls' mother, Tykeshia. She admitted she had been working nights as a nurse during the alleged abuse. Therefore, there would have been plenty of opportunity for Ross to molest the girls at night, as they testified. Tykeshia also admitted that Ross couldn't hold down a job, that he basically hung around the house, and that he had been physically abusive to her. She denied that either girl had mentioned the sexual abuse to her (contrary to the girls' testimony). Yet she had a motive to deny that the girls had told her about the sexual abuse. Admitting to awareness of sexual abuse would reflect poorly on her since she had not done anything about it.

And unlike K.C. and L.C., Tykeshia was impeached. She admitted that she had not been honest in her testimony in the child-in-need-of-assistance proceeding several months before the criminal trial, where she testified that Ross had called her "maybe once or twice." In fact, there were over one hundred complete phone conversations, and she was still telling Ross she loved him.

As I've noted, Ross exercised his constitutional right not to testify. But it is also significant that he went AWOL after the trial started.

Trial was supposed to begin on the morning of Wednesday, March 11, 2020. Ross was not present in the courtroom. His attorney reported that Ross claimed his wife and daughter had been in a car accident and he had been unable to get a ride.[6] The defense asked for a one-day continuance. The continuance was not opposed, and the trial court granted it. Ross appeared in court the next day, March 12, which was the first day of trial. Jury selection took place, opening statements were given, and one witness testified.

But on the second day of trial, March 13, the defendant again was absent. Defense counsel reported that the defendant claimed to be ill. The district court excused the jury but ordered the defendant to report on Monday, March 16, with a note from a doctor explaining his absence. The guardian ad litem objected to the delays, noting the stress on the girls, and it was put on the record that the girls would be testifying on Monday.

On Monday, March 16, the defendant was again a no-show. Evidence was presented that Ross had removed his GPS monitor. The court issued a warrant for Ross's arrest and ordered that the trial proceed in his absence. The girls and other witnesses testified. Then, on Tuesday, March 17, Ross again failed to appear for the final day of trial, which included more testimony, closing arguments, jury deliberations, and the jury's verdict.

At the prosecution's request, the district court instructed the jury as follows regarding Ross's absence:

---

[6]The prosecutor later made a record that "it was told to [him] that it was a very minor accident."

> The Defendant has a Constitutional Right to be present at his trial. The defendant also can choose to waive this right and not attend all or part of the trial proceedings. In this case, the defendant's partial attendance at the trial should not be considered in the jury's deliberations. You are to draw no inference of guilt from Defendant's partial attendance. The burden of proof remains upon the State to prove the guilt of the defendant.

In my view, this instruction (Instruction 14) was a gift to Ross. Under the circumstances here, I think a jury would have been entitled to infer that Ross didn't want to face his accusers. *See People v. Tafoya*, 833 P.2d 841, 843 (Colo. App. 1992) (upholding jury instruction telling jurors they could consider defendant's flight from trial as an indication of guilt); *Sorrell v. State*, 554 A.2d 352, 354–55 (Md. 1989) (finding court properly instructed jury that it may infer consciousness of guilt from the defendant's voluntary absence). As Texas's highest criminal court recently put it, "A defendant could be present and still not testify, or he could testify and be absent part of the time, so a comment on a defendant's absence from the proceedings is not itself a direct comment on the failure to testify." *Sandoval v. State*, No. AP–77,081, 2022 WL 17484313, at *39 (Tex. Crim. App. Dec. 7, 2022).

I do not fault the prosecutor's decision to ask for Instruction 14; presumably, he wanted to avoid creating an issue for appeal. But I don't believe the defendant was entitled to this instruction. In fact, Instruction 14 is the only instruction in the case that actually misstated the law because the defendant doesn't have a "choice" to waive his presence at trial. So to sum up, the court's jury instructions—considered in their entirety—gave Ross *more* than he was entitled to.

One final point. This case is not like *State v. Mathis*, 971 N.W.2d 514, 516, 519–21 (Iowa 2022), where we reversed for a new trial based on the giving of the same single-sentence instruction that we condemned in *Kraai*. The present case, of course, doesn't involve the problematic *Kraai* instruction. In addition, we have different facts. In *Mathis*, the defendant took the stand and denied the abuse, so the case came down to a swearing contest between the alleged victims and the alleged perpetrator. *Id.* at 517–18. In *Mathis*, it was prejudicial to emphasize that the word of the alleged victims didn't need to be corroborated—without also pointing out that testimony of all witnesses should be treated the same and the testimony of the alleged victims had to be believed beyond a reasonable doubt to support a guilty verdict. *Id.* at 520. The *Mathis* circumstances don't exist here.

For all the reasons stated, I would affirm Ross's convictions and sentence.[7]

Christensen, C.J., and Waterman, J., join this dissent.

---

[7]Ross's other arguments for reversal—(1) that the evidence was insufficient and (2) that the district court considered an improper factor during sentencing—are insubstantial, and I would reject them as well.